UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| R POWER BIOFUELS, LLC, | Case No. 16-CV-00716-LHK |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| CHEMEX LLC, | Re: Dkt. No. 38, 39, 42, 52 |
| Defendant. | |

R Power Biofuels, LLC ("Plaintiff") sued Chemex LLC ("Defendant") for breach of contract, breach of express and implied warranties, and for torts involving negligence and intentional conduct.  ECF No. 37, First Amended Complaint ("Compl.").  Before the Court is Defendant's motion to dismiss Plaintiff's claims for negligent and intentional misrepresentation, negligent and tortious interference with prospective economic advantage, tortious interference with contract, breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of fitness for a particular purpose, and Plaintiff's prayer for consequential damages, punitive damages, and attorney's fees.[1]  ECF No. 39 ("Mot.").  Having considered the parties'

---

[1] The parties refer to Plaintiff's intentional misrepresentation claim as both "intentional misrepresentation" and "fraud."  The Court refers to the claim as "intentional misrepresentation."

briefing, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

## I.   BACKGROUND

### A.   Factual Background

The Court takes the facts alleged in the complaint as true for the purposes of deciding the instant motion to dismiss.  Plaintiff is a former owner of AGRON Bioenergy LLC, formerly known as North Star Biofuels LLC (hereinafter "North Star"), and brings the instant suit as assignee of North Star's claims.  Compl. ¶ 3.

In 2012, North Star entered into a written agreement with Defendant, in which Defendant agreed to design, engineer, and build a biodiesel production plant using North Star's proprietary biodiesel production technology.  *Id.* ¶¶ 10–13.  The biodiesel plant was to be built at North Star's facility in Watsonville, California.  *Id.* ¶ 11.  The written agreement was composed of two written "Services Orders," one entered on February 14, 2012 for the design of the biodiesel plant, and one entered on May 22, 2012 for the construction of the biodiesel plant.[2]  *Id.* ¶¶ 13–14; ECF No. 40-1 ("February 14, 2012 Services Order"); ECF No. 40-2 ("May 22, 2012 Services Order"). Defendant refused to build the biodiesel plant unless it was also hired to design the plant.  *Id.* ¶ 16. North Star paid Defendant $3.5 million in total to design and build the plant.  *Id.* ¶ 18.

The biodiesel plant was based on a "modular" design, that is, the plant was composed of multiple independent "skid-mounted" structures connected to one another to form a fully-functioning biodiesel production plant.  *Id.* ¶ 21.  Defendant built each skid one at a time and delivered them on a rolling basis, albeit behind schedule and over-budget.  *Id.* ¶ 26–27.

---

Additionally, the case law refers to claims for tortious interference with prospective economic advantage and tortious interference with contract interchangeably as "intentional interference with prospective economic advantage" or "intentional interference with contract."  This Court refers to the claims with the term "tortious" rather than "intentional."

[2] The two Services Orders were not originally attached to the complaint.  Defendant now moves for judicial notice of the Services Orders, and the motion is unopposed by Plaintiff.  ECF No. 40. The Court GRANTS Defendant's motion for judicial notice.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (allowing judicial notice of "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings'" (citation omitted)).

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

Between May 2012 and December 2012, Defendant asked North Star for permission to utilize used equipment from Defendant's storage yard, rather than new equipment, to build the plant. *Id.* ¶ 23. Defendant promised North Star that the used equipment would be suitable and ready to use for the biodiesel plant after Defendant refurbished and retrofitted the equipment to meet the design specifications of North Star's plant. *Id.* ¶¶ 23–25. Defendant sold this used equipment to North Star at a sizeable profit and charged significant additional fees for the work Defendant did to refurbish and retrofit the equipment. *Id.* ¶ 24.

The plant could not be started until all of the skids were delivered, installed, and properly connected. *Id.* ¶ 27. In June 2013, North Star attempted to start the biodiesel plant. *Id.* ¶ 28. While the structure housing North Star's proprietary biodiesel process functioned adequately, the other units performing conventional chemical engineering processes failed to perform. *Id.* After investigating the system, North Star detected performance problems and identified numerous engineering and fabrication errors caused by Defendant, many of which were caused by Defendant's failure to follow its own engineering and manufacturing designs. *Id.* ¶ 29–30. Specifically, Defendant failed to sufficiently refurbish and retrofit the used equipment it supplied, some of which were filled with dirt and debris and were the incorrect size for the design. *Id.* ¶ 29(b)–(c).

North Star repeatedly informed Defendant that the plant was not operational. *Id.* ¶ 32. Defendant promised to repair the plant at first, accepting responsibility for some errors, but denied responsibility for the majority of the problems. *Id.* ¶ 32–33. Defendant provided some minor repairs and advice, but Defendant's actions and advice did not help or exacerbated the issues. *Id.* ¶ 34.

North Star was forced to make repairs itself and incurred $1.5 million in third-party costs. *Id.* ¶ 35. The plant eventually was able to run, but was never able to produce 1,000 barrels of biodiesel per day, the amount originally contemplated and for which the parties contracted. *Id.* ¶ 36.

North Star entered a number of contracts with major oil companies for the sale of

3

biodiesel, locked in at high prices, in reliance on Defendant's assurances that the plant would be operational. *Id.* ¶ 45. North Star also anticipated that it would expand its business based on its relationships with several oil companies. *Id.* ¶ 46. On May 21, 2015, North Star assigned Plaintiff all claims for monetary losses caused by Defendant's conduct. *Id.* ¶ 49.

### B.    Procedural History

On February 11, 2016, Plaintiff filed the instant suit against Defendant. ECF No. 1. On June 24, 2016, after discussions with Defendant, Plaintiff filed the operative First Amended Complaint. Plaintiff claims (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of the implied warranty of fitness for a particular purpose under California Commerce Code § 2315, (4) breach of express warranty, (5) tortious interference with contract, (6) negligent and tortious interference with prospective economic advantage, and (7) negligent and intentional misrepresentation. Compl. ¶¶ 50–149.

On July 25, 2016, Defendant filed the instant motion to dismiss, and a motion to seal the Services Orders at issue in the instant suit, including the portions of its motion that quote the Services Orders, ECF No. 38. On August 8, 2016, Plaintiff filed an opposition, ECF No. 43 ("Resp."), and moved to seal the portions of its opposition that quote the Services Order, ECF No. 42. On August 18, 2016, Defendant replied, ECF No. 53 ("Reply"), and moved to seal the portions of its reply that quote the Services Order, ECF No. 52.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While "'detailed factual allegations'" are not required, a complaint must include sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

United States District Court
Northern District of California

4

*v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "'formulaic recitation of the elements' of a cause of action."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); accord *Iqbal*, 129 S. Ct. at 1949–50.

### B.    Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127, 1140 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Id.* at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### C.    State Law in Diversity Cases

"In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court."  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).  If the state's highest court has not decided an issue, it is the responsibility of the

5

federal courts sitting in diversity to predict "how the state high court would resolve it." *Id.*; *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted).  In the absence of clear authority, the Court looks for guidance from decisions of the state appellate courts and other persuasive authorities, such as decisions from courts in other jurisdictions and treatises.  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).

## III.    DISCUSSION

In its motion to dismiss, Defendant challenges Plaintiff's tort claims for negligent and intentional misrepresentation, negligent and tortious interference with prospective economic advantage, and tortious interference with contract.  Further, Defendant challenges Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of fitness for a particular purpose, and Plaintiff's prayer for consequential damages, punitive damages, and attorney's fees.  Defendant does not challenge Plaintiff's claims for breach of contract or breach of express warranty.

Defendant challenges the tort claims on the grounds that (1) the tort claims are barred by the "economic loss rule," and (2) the tort claims are insufficiently pled and untimely.  Mot. at 5–17.  Defendant challenges Plaintiff's claim for breach of the implied covenant of good faith and fair dealing on the grounds that the claim is no different from Plaintiff's breach of contract claim, which is not challenged in the instant motion.  Mot. at 17–18.  Defendant challenges Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose on the grounds that the warranty was disclaimed by contract.  Mot. at 18–19.  Defendant challenges Plaintiff's prayer for damages on the grounds that (1) the parties disclaimed consequential damages by contract, (2) punitive damages are unavailable because the tort claims should be dismissed, and (3) attorney's fees are not available in breach of contract and tort cases.  Mot. at 19–22.   Defendant also seeks to seal the Services Orders at issue in the instant suit and any quotes of those Services Orders.  ECF Nos. 38, 42, 52.  The Court addresses each of these challenges to Plaintiff's claims in turn.

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

### A.     Tort Claims Under the Economic Loss Rule

Defendant argues that Plaintiff's tort claims for negligent and intentional misrepresentation, negligent and tortious interference with prospective economic advantage, and tortious interference with contract are barred by the economic loss rule.  Mot. at 12–15.

Under the economic loss rule, "purely economic losses are not recoverable in tort."  *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978)); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) ("[The economic loss rule] requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.").  The purpose of the rule is to "prevent[] the law of contract and the law of tort from dissolving one into the other."  *Id.* at 988 (internal quotation marks and citation omitted); *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.").

However, the economic loss rule does not prevent recovery in tort if (1) a "special relationship" exists between the plaintiff and the defendant, *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979); *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958), or (2) the conduct "violates a duty independent of the contract arising from principles of tort law," *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (citation omitted).

In the briefing on the instant motion, Plaintiff does not challenge Defendant's assertion that Plaintiff only seeks economic losses.  Instead, Plaintiff argues that its claims fall into both exceptions to the economic loss rule because (1) the parties have a special relationship, and (2) an independent duty exists outside the contract.  The Court addresses each exception in turn.

### 1.     Special Relationship Exception

In *J'aire Corp. v. Gregory*, 24 Cal. 3d at 804, and *Biakanja v. Irving*, 49 Cal. 2d at 650, the California Supreme Court "held that a defendant's negligent performance of a contractual

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    obligation resulting in damage to the property or economic interests of a person not in privity

2    [can] support recovery if the defendant was under a duty to protect those interests." *Aas*, 24 Cal.

3    4th at 643–44. The "duty to protect those interests" only arises where a "special relationship"

4    exists between the parties. *Id.* The *J'aire* and *Biakanja* courts utilized a six-factor test for

5    determining when a special relationship creating such a duty exists: "(1) the extent to which the

6    transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3)

7    the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection

8    between the defendant's conduct and the injury suffered, (5) the moral blame attached to the

9    defendant's conduct[,] and (6) the policy of preventing future harm." *J'aire*, 24 Cal. 3d at 804.

10        Defendant argues that the *J'aire* special relationship exception cannot apply at all where,

11   as here, the parties are in privity of contract with one another. Plaintiff argues that the parties'

12   contractual relationship does not prevent finding a special relationship under *J'aire*.

13        The Court first addresses when the special relationship exception applies as a matter of law

14   and then discusses whether the exception applies in the instant case.

            **i.      *J'aire*'s Application as a Matter of Law**

16        When determining whether a special relationship exists under *J'aire* between parties that

17   are in privity of contract, California courts have drawn a distinction between contracts involving

18   goods and contracts involving services. In *North American Chemical Co. v. Superior Court*, 59

19   Cal. App. 4th 764 (1997), the California Court of Appeal held that when the parties are in privity

20   of contract, the *J'aire* exception applies if the contracts are for services. *Id.* at 783. However, the

21   *North American* court also noted that if the contract between the parties involves goods rather than

22   services, "the transaction is governed by the provisions of the Commercial Code," which provides

23   "no room for the expanded [tort] liability which results from the application of *J'aire*." *Id.*; *see*

24   *also* Cal. Com. Code § 2102 (the California Commercial Code "applies to transactions in goods").

25   Accordingly, the *North American* court stated "that *J'aire* could properly be applied in a goods or

26   products case only when there is an *absence* of privity." *North American*, 59 Cal. App. 4th at

27   783–84 (emphasis added).

28

                                          8

The *North American* court reasoned that, when contracts for goods are at issue, "sophisticated parties have the ability to allocate risks and avail themselves of the rights and remedies under commercial law." *Id.* at 779–80 (citing *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal. App. 3d 737, 747–48 (1976)); *see, e.g.*, Cal. Com. Code  § 2719 (allowing disclaimed consequential damages "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose").  In contrast, in contracts for services, the *North American* court held that the service provider should bear the burden of faulty services in order to incentivize the service provider's due care.  *North American*, 59 Cal. App. 4th at 784–85.

For the reasons discussed below, the Court holds that the distinction established by *North American* would be upheld by the Supreme Court of California: *J'aire* does not apply in cases where the parties are in privity and the contract at issue involves a transaction in goods.  *See Albano*, 634 F.3d at 530 (holding that state courts sitting in diversity must determine "how the state high court would resolve" state law issues).  The Court first discusses California Supreme Court precedent, and then turns to lower court precedent.

First, the California Supreme Court has not directly addressed the issue of *J'aire*'s application where the parties are in privity of contract.  By their terms, *J'aire* and *Biakanja* only apply where the parties are not in direct contractual privity.  *See, e.g.*, *J'aire*, 24 Cal. 3d at 804 ("[A] plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were *not in contractual privity*." (citing *Biakanja*, 49 Cal. 2d 647) (emphasis added)).

The California Supreme Court has not since clarified whether *J'aire* applies to parties in privity of contract.  In *Aas*, the latest California Supreme Court opinion addressing the *J'aire* special relationship exception, the California Supreme Court applied *J'aire* to determine whether homeowners and homebuilders had a special relationship that would allow the homeowners to sue in negligence for defects in their homes.  *Aas*, 24 Cal. 4th at 643.  The *Aas* court found no special relationship because the homeowners were unable to show with certainty that the plaintiffs suffered injury, the third *J'aire* factor.  *Id.*  In the course of its analysis, the *Aas* Court noted that

9

1    lower courts had expanded *J'aire* and *Biakanja* to circumstances where the parties were in privity,

2    but did not approve or disapprove of that expansion.  *Id.* (citing *Ott v. Alfa-Laval Agri, Inc.*, 31

3    Cal. App. 4th 1439 (1995), *North American*, 59 Cal. App. 4th 764, and *Pisano v. Am. Leasing*, 146

4    Cal. App. 3d 194, 197 (1983)).  Although the *Aas* case did involve an "uncertain number" of

5    plaintiffs who were in privity with the defendants, the *Aas* court did not explicitly address whether

6    the *J'aire* factors apply to parties in privity.  *Id.* at 642–43, 645–53.  Regardless, even if the *Aas*

7    court reached the issue, *North American*'s holding would not be disturbed because the contracts in

8    *Aas* involved the construction of homes, which are not contracts for goods.  *See Hicks v. Superior*

9    *Court*, 115 Cal. App. 4th 77 (as modified), *review granted and opinion superseded* 89 P.3d 732

10   (Cal. 2004) (noting that contracts for the "construction and sale of newly constructed homes" are

11   not covered by the California Commercial Code).

12          Second, multiple lower courts applying California law support *North American*'s finding

13   that *J'aire* does not apply to contracts for goods where the parties are in privity, or hold that a

14   special relationship should never be found when the parties are in privity.   For example, in *City of*

15   *San Diego v. Amoco Chemical Co.*, 1999 WL 33548157 (S.D. Cal. Sept. 9, 1999), a district court

16   held that, in a case involving a contract for the sale of goods, "*J'aire*'s special relationship test

17   [applies] *only* if the parties are not in contractual privity."  *Id.* at *4 (citation omitted); *see also*

18   *Ladore v. Sony Comput. Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014) (citing

19   *North American* for the principle that "non-economic loss is a required element of a negligence

20   cause of action alleged in a sale of goods case"); *Livermore Amador Valley Wastewater Mgmt.*

21   *Agency v. Nw. Pipe & Casing Co.*, 915 F. Supp. 1066, 1073 (N.D. Cal. 1995) (predicting that

22   California Supreme Court would not extend *J'Aire* to the sale of goods).

23          Similarly, in *Stop Loss Insurance Brokers, Inc. v. Brown & Toland Medical Group*, 143

24   Cal. App. 4th 1036 (2006), a California appellate court addressed the *J'aire* exception in a case

25   where the parties were not in privity.  *Id.* at 1039–40.  In its analysis of *J'aire*, the *Stop Loss* court

26   held that *J'aire* only applies where "(1) the defendant was acting pursuant to a contract, and (2)

27   the defendant's negligent performance of the contract injures a *third party*."  *Id.* at 1042 (emphasis

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    added).  The court held that courts have refused "to create broad tort duties in arms-length

2    business dealings whenever it is convenient to resort to the law of negligence."  *Id.*

3          The lower court opinions that seemingly contradict *North American* are either

4    distinguishable or unpersuasive.  Only one California appellate court decision has involved the

5    application of the *J'aire* doctrine where the parties had a contract with one another for goods, but

6    this case is readily distinguishable.  In *Pisano v. American Leasing*, a California appellate court

7    remanded for an analysis of the *J'aire* factors in a case where the plaintiff sued the manufacturer

8    and lessor of a sander the plaintiff had rented.  146 Cal. App. 3d 194, 196 (1983).  The faulty

9    sander had damaged wooden cabinets the plaintiff was making for a client and had caused the

10   plaintiff to lose earnings due to the time spent fixing the damage.  *Id.*  However, *Pisano* did not

11   provide a rationale for extending *J'aire* to a case where the parties are in privity of contract.  In

12   addition, *Pisano* has been distinguished in later decisions applying California law because

13   plaintiff's property was physically damaged, and thus traditional tort duties "independent of the

14   contract" were triggered.  *North American*, 59 Cal. App. 4th at 783 (distinguishing *Pisano* based

15   on the presence of property damage); *Dep't of Water & Power*, 902 F. Supp. at 1188 (same).

16         In the other cases applying *J'aire* to contracts involving goods, the parties were not in

17   privity of contract.  For example, in *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439 (1995), a

18   California appellate court applied the *J'aire* test to determine if a special relationship existed

19   between a dairy farmer and the manufacturer of a cow-milking machine.  *Id.* at 1444.  However,

20   the plaintiff had purchased the machine through an intermediary and thus was not in privity of

21   contract with the defendant.[3]  *Id.* at 1444.  Other cases applying *J'aire* to contracts for goods

22

23   ───────────────

24   [3] However, the *Ott* court still broadly stated in dicta that "the reasoning of *J'aire* is wholly
     incompatible with a limitation of the cause of action to those instances in which the plaintiff and
25   defendant are not in privity[.]"  *Ott*, 31 Cal. App. 4th at 1448.  The reasoning to which the *Ott*
     court refers is a statement in *J'aire* that "'an injury to the plaintiff's economic interests should not
26   go uncompensated merely because it was unaccompanied by any injury to his person or
     property.'"  *Id.* at 1448 (citation omitted).  However, the *J'aire* plaintiff was not in privity of
27   contract with the defendant and therefore would have had no remedy without *J'aire*'s exception to
     the economic loss rule.  In contrast, where privity exists, contract law provides a remedy.
28   Therefore, the Court finds *Ott*'s reasoning to be unpersuasive.

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1  similarly have not involved privity of contract between the parties.  *See, e.g.*, *Ales-Peratis Foods*

2  *Int'l, Inc. v. Am. Can Co.*, 164 Cal. App. 3d 277, 289 (1985) (suit against supplier of cans

3  purchased through intermediary); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048 (N.D.

4  Cal. 2004) (suit against subcontractor with whom the plaintiff did not have privity); *Zamora v.*

5  *Shell Oil Co.*, 55 Cal. App. 4th 204, 211–12 (1997) (suit against manufacturer of pipes purchased

6  through intermediary); *Fieldstone Co. v. Briggs Plumbing Prods. Inc.*, 54 Cal. App. 4th 357, 367–

7  69, 371 (1997) (suit against sink manufacturer where there was "no privity of contract").

8  Therefore, these cases do not affect *North American*'s statement that *J'aire* may "properly be

9  applied in a goods or products case only when there is an absence of privity."  *North American*, 59

10  Cal. App. 4th at 783–84.

11        Overall, pursuant to *North American*, this Court holds that *J'aire* does not apply where the

12  parties are in privity of contract with respect to contracts for goods.  In doing so, this Court

13  follows the California Supreme Court's statement that "[c]ourts should be careful to apply tort

14  remedies only when the conduct in question is so clear in its deviation from socially useful

15  business practices that the effect of enforcing such tort duties will be . . . to aid rather than

16  discourage commerce."  *Erlich*, 21 Cal. 4th at 554.  Indeed, tort actions can expose parties in

17  business relationships to liability far beyond what was originally agreed, which undermines the

18  predictability of costs in contractual relationships.  Predictability "plays an important role in our

19  commercial system."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988); *see also Giles*

20  *v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 876 (9th Cir. 2007) (quoting *All-Tech Telecom,*

21  *Inc. v. Amway Corp.*, 174 F.3d 862, 865–66 (7th Cir. 1999) (Posner, J.) ("[T]he provision of . . .

22  duplicative tort remedies would undermine contract law.  That law has been shaped by a tension

23  between a policy of making the jury the normal body for resolving factual disputes and the desire

24  of parties to contracts to be able to rely on the written word and not be exposed to the

25  unpredictable reactions of lay factfinders to witnesses who testify that the contract means

26  something different from what it says.")).

27        Thus, the Court will not apply the *J'aire* test in a case where the parties are in privity of

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    contract with respect to a contract involving goods.

2              ii.        **Whether *J'aire* Applies in the Instant Case**

3         The Court now turns to whether *J'aire* applies in the instant case, which depends on

4    whether the Services Orders are contracts for goods or services.  A contract for goods involves the

5    purchase or sale of "all things (including specially manufactured goods) which are movable at the

6    time of identification to the contract for sale."  Cal. Com. Code § 2105(1).  A contract for services,

7    in contrast, involves the purchase of labor and the "knowledge, skill, and ability" of the

8    contracting party.  *TK Power, Inc. v. Textron, Inc.*, 433 F. Supp. 2d 1058, 1062 (N.D. Cal. 2006)

9    (finding design of a prototype to involve a contract for services); *see also FiTeq Inc. v. Venture*

10   *Corp.*, 2015 WL 3987912, at *6–7 (N.D. Cal. June 30, 2015), at *6 (holding that the engineering

11   and design of a "smart" credit card involves a contract for services, but that the manufacture of

12   those cards for sale involves a contract for goods).

13        When a transaction involves a mix of goods and services, courts applying California law

14   look to the "essence" of the agreement to determine whether the contract is one for goods to which

15   the Commercial Code applies.  *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171,

16   1186 (2008) (stating that courts must "look to the 'essence' of the agreement").  "'The test for

17   inclusion or exclusion is not whether [goods and services] are mixed, but, granting that they are

18   mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the

19   rendition of service, with goods incidentally involved (*e.g.,* contract with artist for painting) or is a

20   transaction of sale, with labor incidentally involved (*e.g.,* installation of a water heater in a

21   bathroom).'"  *C9 Ventures v. SVC-W., L.P.*, 202 Cal. App. 4th 1483, 1494 (2012) (quoting

22   *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974)) (alteration in original).

23        Here, the parties entered into two separate written agreements.  First, the February 14,

24   2012 Services Order was a $76,000 contract for the design of Plaintiff's biodiesel plant.  Compl.

25   ¶ 19.  Second, the May 22, 2012 Services Order was an approximately $3.41 million contract in

26   which $410,000 was paid for Defendant's design and engineering services and $3 million was

27   paid for Defendant to build and deliver the modular units of the power plant.  *Id.*

28
     13
     Case No. 16-CV-00716-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

*United States District Court*
*Northern District of California*

The Court first discusses the parties' positions on whether the Services Orders are contracts for goods.  Second, the Court independently considers whether the Services Orders are contracts for goods.

In its opposition to the instant motion, Plaintiff argues that it "has alleged facts that, when taken as true, demonstrate the Contract is one for goods governed by the California Commercial Code."  Resp. at 22–23.  Plaintiff argues that the essence of the overall transaction encompassing the Services Orders involves a contract for goods because the service components of the transaction are "incidental."  *Id.*

In addition, Defendant states that it "assumes for the purposes of this motion" that the California Commercial Code applies.  Mot. at 18 n.8.  In Defendant's reply to Plaintiff's motion, Defendant does not challenge Plaintiff's argument that the contract is one for goods rather than services.

Therefore, the parties agree, at least for the purposes of this motion, that the overall transaction was one for goods to which the California Commercial Code applies.  *See Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 546 (9th Cir. 2010) (applying the California Commercial Code when the plaintiff conceded that the Commercial Code applied).

For the reasons provided below, the Court agrees with the parties that, even though the transaction here involves a mix of goods and services, the overall transaction is one for goods to which the California Commercial Code applies.  As stated above, when a contract involves a mix of goods and services, the Court must look to whether goods or services predominate.  *C9 Ventures*, 202 Cal. App. 4th at 1494.  Therefore, the Court first determines which portions of the transaction involve goods and which portions involve services and then discusses whether goods or services predominate.  *See id.* (comparing the portions of the contract involving goods and involving services).

As described above, Plaintiff spent $76,000 on the design of the biodiesel plant, $410,000 on other design and engineering services, and $3 million to build and deliver the modular units of the power plant.  Compl. ¶ 19.  The Court first addresses the manufacture and delivery of the

modular units and then discusses the design and engineering portions of the Services Orders.

The manufacture and delivery of the modular units of the biodiesel plant in the May 22, 2012 Services Order involved a sale of goods because the skids that were manufactured and delivered were specially manufactured "things" that were "movable" when they were delivered to Plaintiff. *See* Cal. Com. Code § 2105(1) (goods are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale"). *See also Gonsalves*, 2006 WL 2711540, at *1, 5 (finding that the California Commercial Code applied to a contract to "construct a twenty-five by nine foot boat . . . and to deliver the Boat to Plaintiff"). In addition, the May 22, 2012 Services Order contains a list of component parts of the modular units such as tanks, pumps, and condensers that Defendant purchased and resold to Plaintiff as part of the contract. May 22, 2012 Services Order Ex. A at 2–5. *See United States v. City of Twin Falls*, 806 F.2d 862, 871 (9th Cir. 1986), *overruled on other grounds as recognized by Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 551–52 (9th Cir. 1992) (finding that a contract for the manufacture and installation of equipment that would treat waste water at a waste water treatment plant to be a contract for goods partly because the contract's provisions contained a list of movable goods that were to be used such as "cover piping[,] . . . high pressure pump(s)[, and] sludge grinder(s)" that were to be used in the installation of the equipment.).

In contrast, the design of the biodiesel plant and the other design and engineering services provided by Defendant involve services. *See TK Power, Inc. v. Textron, Inc.*, 433 F. Supp. 2d 1058, 1062 (N.D. Cal. 2006) (finding design of a prototype to involve a contract for services).

The question then is whether the Services Orders' "predominant factor, their thrust, their purpose, reasonably stated" is for goods or for services. *C9 Ventures*, 202 Cal. App. 4th at 1494 (citation omitted). Here, Plaintiff's complaint alleges that the "overarching, predominant purpose of North Star's agreements and relationship with [Defendant] was to purchase the major production and processing units for a fully operational . . . biodiesel plant." Compl. ¶ 17. In fact, Plaintiff had originally requested that Defendant solely manufacture the modular units, but Defendant would only provide the modular units if they were also hired to design the biodiesel

15

United States District Court
Northern District of California

1    plant.  Compl. ¶ 15.  As Plaintiff concedes, the "design element is incidental to the sale of goods."

2    Resp. at 22.  Thus, the predominant purpose of the contract was the purchase of "production and

3    processing units," not the other design and engineering services Defendant also provided.

4            Additionally, Plaintiff spent far more money on the "production and processing units" than

5    on the services.  *C9 Ventures*, 202 Cal. App. 4th at 1494 ("The court may compare the relative

6    cost of the goods and services in the transaction and the purpose of the agreement in order to

7    determine whether it is predominantly a sale of goods or transaction for services.").  Plaintiff spent

8    $3 million to acquire the modular units and $486,000 on pure services ($76,000 for the February

9    14, 2012 Services Order and $410,000 for design and engineering services).  Thus, only about

10   14% of the total money spent on the contract was used purely for services.  This proportion is

11   comparable to the proportion in *Pittsley v. Houser*, 125 Idaho at 820, a case cited approvingly in

12   *C9 Ventures*, 202 Cal. App. 4th at 1494.  In *Pittsley*, the court found that the sale of goods

13   predominated when the services were approximately 16.2% of the total cost.  *Pittsley*, 125 Idaho at

14   823 (of $4319.50 total spent on carpeting, $700 was spent on installation).

15           Overall, the Court finds that the contract here is predominantly one for goods and that the

16   California Commercial Code applies.  *See C9 Ventures*, 202 Cal. App. 4th at 1494 (applying the

17   Commercial Code where a transaction in goods predominates).

18           Above, the Court determined that, under *North American*, the *J'aire* exception does not

19   apply where the parties are in privity of contract with respect to a transaction involving goods to

20   which the California Commercial Code applies.  Accordingly, because the transaction at issue here

21   predominantly involves goods and the California Commercial Code applies, *J'aire*'s special

22   relationship exception does not allow Plaintiff's tort claims to avoid the economic loss rule.

23           Further, the policies underlying the economic loss rule support finding no special

24   relationship tort duty in this case.  In essence, Plaintiff is seeking another means to recover

25   damages for a breach of contract.  As discussed above, when the parties have engaged in an arms-

26   length business transaction, California courts have been less willing to set aside the risk

27   allocations negotiated by the parties.  *Foley*, 47 Cal. 3d at 683 (discussing need for predictability

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

in commerce); *North American*, 59 Cal. App. 4th at 779–80 (finding that the parties can adequately negotiate who will bear the risk that a good will fail).  Although Plaintiff alleges that the Services Orders' terms were provided on a "take it or leave it basis," the complaint contains no allegation that the parties were in unequal bargaining positions when negotiating the terms of the $3.5 million contract between the two companies.  If Plaintiff had hoped to obtain consequential damages, including lost profits, Plaintiff could have negotiated that as part of its contract.  Additionally, tort damages are less necessary to compensate Plaintiff because California Commercial Code § 2719(2) allows additional remedies "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose."  Accordingly, the Court finds that *J'aire* special relationship exception does not apply.

### 2.    Independent Duty Exception

As discussed above, Plaintiff argues that two exceptions to the economic loss rule apply in this case: *J'aire*'s special relationship exception and the "independent duty exception."  Having found that *J'aire*'s special relationship exception does not apply, the Court now turns to whether the second exception applies here.

The independent duty exception to the economic loss rule applies where the defendant's conduct "violates a duty independent of the contract arising from principles of tort law."  *Erlich*, 21 Cal. 4th at 551.  "[O]utside the insurance context, 'a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'"  *Erlich*, 21 Cal. 4th at 553–54 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995)).  Specifically, the California Supreme Court has recognized independent duties where a defendant's actions that constitute breach of contract also cause physical injury; for wrongful discharge in violation of fundamental public policy; or when the plaintiff was fraudulently induced to enter the contract.  *Id.* at 551–52.  "In each of these

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    cases, the duty that gives rise to tort liability is either completely independent of the contract or

2    arises from conduct which is both intentional and intended to harm." *Id.* at 552 (citing

3    *Christensen v. Superior Court*, 54 Cal. 3d 868, 885-886 (1991)); *see also Robinson Helicopter*, 34

4    Cal. 4th at 990 (finding an independent duty because the defendant committed fraud *independent*

5    *of the contract* and that fraud exposed the plaintiff to personal liability and members of the public

6    to harm).

7            Here, Plaintiff's sole argument concerning the independent duty exception is that a duty

8    independent of the contract was created when Defendant offered and Plaintiff accepted satisfaction

9    of the contract with used or refurbished goods.  Resp. at 11–12.  The parties' arguments focus on

10   whether used goods were part of the original agreement.  *Id.*; Reply at 14.  However, even

11   assuming the use of refurbished goods was not part of the original agreement, Plaintiff has failed

12   to show how Defendant's actions "violate[] a duty independent of the contract arising from

13   *principles of tort law*."  *Erlich*, 21 Cal. 4th at 551 (emphasis added).  Defendant's use of used or

14   refurbished equipment alone simply shows that Defendant breached the original contract or that

15   Plaintiff accepted a modification to the contract.  *See Foster Poultry Farms v. Alkar-Rapidpak-MP*

16   *Equip., Inc.*, 868 F. Supp. 2d 983, 994 (E.D. Cal. 2012) (finding the economic loss rule to bar

17   separate tort claims even though the defendant potentially breached a "modification" to a

18   contract).  Therefore, Plaintiff's argument fails.

19           Additionally, although Plaintiff has alleged some intentional conduct and common law

20   intentional torts, Plaintiff does not argue that these allegations create an independent duty under

21   *Erlich*.  *See Erlich*, 21 Cal. 4th at 553–54 (providing relief  in some circumstances where breach of

22   contract accompanied by a "common law tort").  The Court also finds, below, that Plaintiff's

23   intentional tort claims all must be dismissed because they have been insufficiently pled or are

24   untimely.  Thus, the Court need not reach whether the intentional conduct or intentional torts

25   alleged by Plaintiff involve an "independent duty" sufficient to satisfy *Erlich*.

26           The Court now addresses the statute of limitations and the pleading standard with respect

27   to Plaintiff's tort claims.

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1

### B.    Pleading of Tort Claims

2      Defendant argues that Plaintiff's tort claims for negligent and intentional

3 misrepresentation, negligent and tortious interference with prospective economic advantage, and

4 tortious interference with contract are insufficiently pled and untimely.  The Court first discusses

5 whether the claims for negligent and intentional misrepresentation are sufficiently pled and timely,

6 and then discusses whether the claims for negligent and tortious interference with prospective

7 economic advantage and tortious interference with contract are sufficiently pled and timely.

### 1.    Negligent and Intentional Misrepresentation

9      Defendant argues that Plaintiff's claims for negligent and intentional misrepresentation are

10 untimely and are insufficiently pled.  "The elements of [intentional misrepresentation] are: (1) a

11 misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

12 (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting

13 damage."  *Robinson Helicopter*, 34 Cal. 4th at 990 (citing *Lazar v. Superior Court*, 12 Cal. 4th

14 631, 638 (1996)).  While a misrepresentation is generally only actionable if the misrepresentation

15 concerns past or existing material facts, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App.

16 4th 153, 158 (1991), a promise to do something in the future may constitute intentional

17 misrepresentation if it was made without any intention to perform, *Lazar*, 12 Cal. 4th at 638.

18      Negligent misrepresentation requires a similar showing; with the exception that the

19 defendant need not actually know the representation is false.  Instead, to plead negligent

20 misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds for

21 believing the representation to be true.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

22 *Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (identifying the elements

23 of negligent misrepresentation as: "'(1) the misrepresentation of a past or existing material fact[;]

24 (2) without reasonable ground for believing it to be true[;] (3) with intent to induce another's

25 reliance on the fact misrepresented[;] (4) justifiable reliance on the misrepresentation[;] and

26 (5) resulting damage'") (quoting *Apollo Cap. Fund LLC v. Roth Cap. Partners, LLC*, 158 Cal.

27 App. 4th 226 (2007)).

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Claims sounding in fraud, such as negligent and intentional misrepresentation, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[4]  Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted).  The heightened pleading requirement of Rule 9(b) does not apply to allegations regarding the defendant's state of mind.  Thus, knowledge and intent need only be alleged generally to state a valid claim for negligent or intentional misrepresentation.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Defendant argues that (1) Plaintiff's negligent and intentional misrepresentation claims are untimely and (2) Plaintiff's negligent and intentional misrepresentation claims fail to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  The Court addresses each argument in turn.

### a.    Statute of Limitations

Defendant argues that Plaintiff's claims for negligent and intentional misrepresentation are untimely.  In California the statute of limitations for intentional misrepresentation is three years.

---

[4] Although "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, . . . most district courts in California hold that it does."  *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *8 n.1 (N.D. Cal. Sept. 8, 2016) (citing *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012)).

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    Cal. Civ. Proc. Code § 338(d).  In contrast, "[a] negligent misrepresentation claim has either a

2    two- or three-year statute of limitations." *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1133

3    n.5 (N.D. Cal. June 30, 2009).  Where the "essence of th[e] [negligent misrepresentation] cause of

4    action is negligence, not fraud," a two-year statute of limitations applies.  *Ventura County Nat'l*

5    *Bank v. Macker*, 49 Cal. App. 4th 1528, 1530–31 (1996) (finding accounting firm's failure to

6    provide correct numbers in audit report involved a failure to meet a standard of reasonable care).

7    However, where the essence of the negligent misrepresentation cause of action is "deceit," a three-

8    year statute of limitations applies.  *Merchants Fire Ass. Corp. of N.Y. v. Retail Credit Co., Inc.*,

9    206 Cal. App. 2d 55, 61–62 (1962); *see also Malmen v. World Savings, Inc.*, 2011 WL 1464587,

10   at *3 (C.D. Cal. April 18, 2011) (applying three-year statute of limitations because the

11   misrepresentation involved deceit rather than "a failure to meet a standard of reasonable care"

12   (quoting *Ventura*, 49 Cal. App. 4th at 1530)).

13        Here, Defendant concedes that a three-year statute of limitations applies to Plaintiff's

14   negligent and intentional misrepresentation claims.  Mot at. 16.  Additionally, Plaintiff's negligent

15   misrepresentation claim involves allegations that Defendant tricked Plaintiff into purchasing

16   Defendant's used goods so that Defendant could "derive monetary benefits from equipment it

17   already owned." Compl. ¶ 141.  Thus, the focus of the claim is one primarily involving deceit in

18   order to obtain monetary benefits rather than evaluating whether Defendant exercised reasonable

19   care.  This case is unlike *Ventura* where the use of incorrect numbers in an audit report went

20   directly to whether the firm was exercising reasonable care and not whether there was fraud.

21   Accordingly, the three-year statute of limitations applies to the negligent and intentional

22   misrepresentation claims.

23        Under the three-year statute of limitations, the negligent and intentional misrepresentation

24   claims are not barred.  The instant suit was filed on February 11, 2016.  ECF No. 37.  Thus, the

25   claims for negligent and intentional misrepresentation must have accrued no earlier than February

26   11, 2013 to meet the statute of limitations.  A cause of action accrues when the last element of the

27   tort occurs or when the plaintiffs discover they have suffered appreciable harm and the cause of

28
     Case No. 16-CV-00716-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

that harm.  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373–74 (2001) (an action for intentional

misrepresentation is not "not deemed accrued 'until the discovery, by the aggrieved party, of the

facts constituting the fraud or mistake'").  Here, Plaintiff pleads that it first discovered an issue

with the plant in June 2013.  Thus, Plaintiff's claim accrued months after the February 11, 2013

statute of limitations deadline in this case.  Therefore, the statute of limitations does not bar

Plaintiff's negligent and intentional misrepresentation claims.

### b.      Sufficiency of Pleading

With respect to Plaintiff's claims for negligent and intentional misrepresentation,

Defendant also argues that, under Rule 9(b), Plaintiff has failed to sufficiently plead "an account

of the time, place, and specific content of the false representations."  *Swartz*, 476 F.3d at 764

(citation and quotation marks omitted).  The Court first analyzes Plaintiff's claim for intentional

misrepresentation, and then analyzes Plaintiff's claim for negligent misrepresentation.

With respect to the claim for intentional misrepresentation, Plaintiff 's sole factual

allegation in the complaint is the following: "Between May 2012 and December 2012, Chemex,

through its agent Glenn Jose, made repeated telephonic representations to North Star, i.e. Jim

Levine, Michael Doyle, and others, that Chemex could fully perform the contract utilizing used—

rather than new—parts.  He promised that Chemex would make these parts suitable and ready for

use in the biodiesel plant."  Compl. ¶¶ 25, 130.

The Court agrees with Defendant that the factual allegations supporting Plaintiff's claim

for intentional misrepresentation fall short of the particularity requirement of Rule 9(b) and are not

"specific enough to give defendant[] notice of the particular misconduct which is alleged to

constitute the fraud charged."  *Semegen*, 780 F.2d at 731.  Of the "who, what, when, where, and

how" that must be alleged with particularity, Plaintiff fails to plead the "who" and the "when"

sufficiently.  *Vess*, 317 F.3d at 1106.

With respect to "who," Plaintiff alleges that the false statements were made to three

specific people "and others."  Plaintiff's failure to specify who these "others" were does not satisfy

the requirements of Rule 9(b).  Defendant cannot sufficiently respond to allegations of false

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

representations with respect to a subset of unspecified individuals.  In *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010), the Ninth Circuit held that two plaintiffs insufficiently pled wire fraud because the plaintiffs "failed to allege which of them made any of the telephone calls" in which the alleged misrepresentations occurred.  *Id.* at 558.  Thus, the plaintiffs failed to particularly specify who "was a party to the alleged misrepresentations."  *Id.*  Although, here, Plaintiff is listing individuals receiving calls on behalf of a single entity, North Star, Plaintiff still must provide defendant "notice of the particular misconduct" and, therefore, must specify each party to the alleged misrepresentation.  *Semegen*, 780 F.2d at 731.

With respect to "when," Plaintiff alleges that Defendant made "repeated telephonic representations" that occurred "[b]etween May 2012 and December 2012."  Compl. ¶ 25.  This eight-month time frame is insufficient.  In *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868 (N.D. Cal. 2015), this Court found allegations of fraud to not satisfy Rule 9(b) partly because the Plaintiff did not specify the time and date of the alleged misrepresentations.  *Id.* at 887–88 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.")).  There, the plaintiffs alleged that the fraudulent conversations occurred "in 2011 and 2012" and "in approximately 2008," which the court found insufficient because the plaintiffs failed to identify "the specific dates or even the months in which the alleged conversations occurred."  *Id.* at 888.

Here, specifying an eight-month time-frame is not significantly more specific than stating "in 2011 and 2012."  With allegations of "repeated" conversations over an eight-month time frame involving multiple North Star agents, it is unclear how Defendant will be able to identify the particular conversations at issue.  Accordingly, Defendant will be hindered in its ability to defend itself with respect to Plaintiff's intentional misrepresentation claim.

The Court now turns to the negligent misrepresentation claim's sole factual allegation: "[Defendant] represented that it could perform the Contract utilizing used inventory and parts it already possessed, rather than new parts."  Compl. ¶ 141.  Plaintiff fails to specify who made the statements, who heard the statements, and when the statements were made.  *See Sanford*, 625 F.3d

at 558 (requiring the parties to the misrepresentation be identified); *Ryan*, 147 F. Supp. 3d at 887–88 (requiring the time of the false representation to be identified).  Thus, Plaintiff fails to sufficiently allege the "who, what, when, where, and how" of the alleged misrepresentation underlying Plaintiff's negligent misrepresentation claim.  *Vess*, 317 F.3d at 1106.

Therefore, Defendant's motion to dismiss plaintiff's claims for negligent and intentional misrepresentation is GRANTED with leave to amend.  Leave to amend is warranted because Plaintiff may be able to identify particular conversations where negligent or intentional misrepresentations occurred.  Additionally, the economic loss rule does not render amendment futile because Plaintiff may be able to identify facts that establish an exception to the economic loss rule.

### 2.   Negligent and Tortious Interference with Prospective Economic Advantage and Tortious Interference with Contract

The Court next addresses the statute of limitations and pleading standard for Plaintiff's negligent and tortious interference with prospective economic advantage and tortious interference with contract claims.  Under California law, a claim for tortious interference with contract requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 979 (N.D. Cal. 2013) (quoting *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26 (1998)).

A claim for negligent or tortious interference with prospective economic advantage has similar elements.  "The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this

24

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected . . . ." *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, 2011 WL 5360074, at *5 (S.D. Cal. Nov. 3, 2011) (quoting *North American*, 59 Cal. App. 4th at 786).

The tort of tortious interference with prospective economic advantage has the same elements, except the defendant's conduct must be intentional. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) ("To state a claim for [tortious] interference with prospective economic advantage, a plaintiff must prove: (1) the reasonable probability of a business opportunity, (2) the intentional interference by defendant with that opportunity, (3) proximate causation, and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (1980), and citing *CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 646 (1998) (internal quotation marks omitted)).

With respect to these three interference claims, the Court first addresses whether the suit falls within the statute of limitations and then addresses whether the claims have been adequately pled.

### a.      Statute of Limitations

Defendant contends that Plaintiff's claims for negligent and tortious interference with prospective economic advantage and tortious interference with contract are untimely.  Tort claims have a statute of limitations of two years.  Cal. Civ. Proc. Code § 339(1).  The accrual of the statute of limitations is "postpone[d] . . . until the plaintiff discovers, or has reason to discover, the cause of action."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 951 (C.D. Cal. 2013).

The instant suit was filed on February 11, 2016, ECF No. 37, meaning that the tort claims must have accrued no earlier than February 11, 2014.  Under the three interference tort claims, the

25

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1   interference claimed by Plaintiff was caused by the inoperability of the biodiesel plant, which

2   caused the alleged interference with contract and prospective business advantage.  Compl. ¶¶ 88,

3   109, 111, 123, 125.  In Plaintiff's complaint, Plaintiff alleges that it first discovered that the plant

4   would not start in June 2013.  Compl. ¶ 28.  Accordingly, the discovery of the problems with the

5   biodiesel plant falls outside the statute of limitations.  Technically, the three interference claims

6   would accrue when Plaintiff discovered or had reason to discover that the plant's inoperability

7   would interfere with Plaintiff's contracts or prospective economic advantage, but Plaintiff

8   provides no separate date in its complaint besides its discovery of the plant's inoperability and,

9   thus, the Court cannot conclude that the discovery of the three interference claims fell within the

10  statute of limitations.

11       Plaintiff argues, however, that the statute of limitations should be equitably tolled for the

12  time that Plaintiff sought a different remedy.  In *McDonald v. Antelope Valley Cmty. Coll. Dist.*,

13  45 Cal. 4th 88, 99 (2008), the California Supreme Court held that tolling applies where "an injured

14  person has several legal remedies and, reasonably and in good faith, pursues one."  *Id.* at 100.

15  Thus, equitable tolling may occur "where one action stands to lessen the harm that is the subject of

16  a potential second action; where administrative remedies must be exhausted before a second action

17  can proceed; or where a first action, embarked upon in good faith, is found to be defective for

18  some reason."  *Id.* at 100.  The purpose behind the doctrine is to avoid "chaos in the administration

19  of justice" and to encourage plaintiffs to seek administrative remedies or an organization's internal

20  remedies first rather than requiring plaintiffs to seek multiple avenues of relief at once.  *Id.* (citing

21  *Westlake Cmty. Hosp. v. Superior Court*, 17 Cal. 3d 465, 469, 551 P.2d 410, 411 (1976) (requiring

22  a doctor suing over denial of staff privileges at a private hospital to first "exhaust the available

23  internal remedies afforded by the hospital")).  Notably, the equitable tolling doctrine does not

24  compromise "defendants' significant interest in being promptly apprised of claims against them"

25  because the first proceeding giving rise to the tolling provides the defendant notice.  *Id.*  However,

26  equitable tolling does not apply for every type of alternative remedy.  In *65 Butterfield v. Chicago

27  Title Ins. Co.*, 70 Cal. App. 4th 1047 (1999) (as modified), for example, a California appellate

28

United States District Court
Northern District of California

1    court held that "merely engaging in informal negotiations" does not equitably toll the statute of

2    limitations.  *Id.* at 1063.

3          Here, Plaintiff argues that equitable tolling should occur because Plaintiff sought a remedy

4    under the contract by asking Defendant to repair the problems in the biodiesel plant.  May 22,

5    2012 Services Order, Terms & Conditions ¶ 13(c) ("In the event contractor is in breach of any of

6    its obligations under this Services Order . . . then Contractor shall re-perform the deficient

7    Services to the extent necessary to overcome the deficiency.").  However, the *McDonald* equitable

8    tolling doctrine does not apply because a request for repairs to cure a contract is not equivalent to

9    the judicial, administrative, or internal organization adjudicatory remedies required in *McDonald*.

10   Such requests for contractual remedies from Defendant are more similar to "informal

11   negotiations," which the court in *65 Butterfield* held did not trigger equitable tolling.  Therefore,

12   equitable tolling does not apply in this case.

13         There are cases that allow equitable tolling where the Defendant has engaged in fraudulent

14   concealment to prevent the plaintiff from discovering the cause of action.  *Grisham v. Philip

15   Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007) ("A defendant's fraud in concealing a cause of

16   action against him will toll the statute of limitations.").  However, Plaintiff has not alleged or

17   argued that fraudulent concealment tolled the statute of limitations to a time within the statute of

18   limitations in this case.  Accordingly, the Court finds that, as currently pled, the tortious

19   interference with contract and negligent and tortious interference with prospective economic

20   advantage claims are untimely.

21              **b.     Sufficiency of Pleadings**

22         Defendant next argues that Plaintiff's negligent and tortious interference with prospective

23   economic advantage and tortious interference with contract claims are insufficiently pled because

24   they do not specifically allege the existence of "any specific relationships interfered with or lost

25   business opportunities."  Mot. at 11–13.  The Court first addresses Defendant's arguments with

26   respect to Plaintiff's negligent and tortious interference with prospective economic advantage

27   claims and then addresses the argument with respect to Plaintiff's tortious interference with

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1  contract claim.

2         With respect to the negligent and tortious interference with prospective economic

3  advantage claims, a plaintiff must allege that "an economic relationship existed between the

4  plaintiff and a third party which contained a reasonably probable future economic benefit or

5  advantage to plaintiff." *Blue Dolphin Charters*, 2011 WL 5360074 at *5. Here, Plaintiff alleges

6  that it "was involved in business and economic relationships with major consumers of biodiesel

7  that contained a reasonable probability of future economic benefit to" Plaintiff. *Id.* ¶ 102, 116.

8         These pleadings are insufficient to sustain the claims alleging an interference with

9  prospective economic advantage. In *Ramona Manor Convalescent Hosp. v. Care Enterps.*, 177

10  Cal. App. 3d 1120 (1986), a California appellate court addressed whether claims for interference

11  with a prospective economic advantage and for interference with contract require a plaintiff to

12  name the specific third party at issue. *Id.* at 1132–33. The *Ramona* court held that while the

13  actual name of the third party need not be provided, the plaintiff must allege a relationship with "a

14  specific, albeit unnamed" third party. *Id.* at 1133. In reaching its conclusion, the *Ramona* court

15  relied on the Second Restatement of Torts' section on "Intentional Interference with Performance

16  of Contract by Third Person," which provides that "[t]o subject the actor to liability under this

17  rule, his conduct must be intended to affect the contract of a specific person." Restatement

18  (Second) of Torts § 766, cmt. p; *see also Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal.

19  App. 4th 507, 527 (1996) (citing *Ramona* approvingly).

20         This Court has previously applied *Westside*'s and *Ramona*'s holdings in a case applying

21  California law. *Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013).

22  There, this Court held that in the context of claims for negligent and tortious interference with

23  prospective economic advantage, "it is essential that the Plaintiff allege facts showing that

24  Defendant interfered with Plaintiff's relationship with a particular individual." *Id.* ("Plaintiff

25  alleges that Defendant interfered 'with [Plaintiff's] employees and customers.' However, Plaintiff

26  does not specifically identify any of these employees and customers. Accordingly, Plaintiff's

27  interference with prospective business advantage claims fail." (internal citation omitted)

28

28

United States District Court
Northern District of California

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    (alteration in original)).

2         Here, Plaintiff solely alleges that it has an economic relationship with "major consumers of

3    biodiesel," and does not provide details about "specific" companies.  Indeed, from Plaintiff's

4    allegations it is impossible to even tell how many such relationships existed.  Thus, Plaintiff has

5    failed to satisfy the substantive pleading requirements of *Ramona* and *Damabeh*.

6         Plaintiff's claim for tortious interference with contract fails under the same rationale as the

7    two claims for interference with prospective economic advantage.  In order to plead a valid

8    interference with contract claim, Plaintiff must plead the existence of "a valid contract between

9    plaintiff and a third party."  *Piping Rock Partners*, 946 F. Supp. 2d at 979.  Notably, *Ramona*'s

10   holding requiring the identification of specific parties involved claims for both tortious

11   interference with prospective economic advantage and tortious interference with contract.

12   *Ramona*, 177 Cal. App. 3d at 1130–33.  Additionally, multiple district courts have set aside

13   tortious interference with contract claims where no specific parties to the contracts were alleged.

14   *See AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003)

15   ("Plaintiff makes conclusory allegations that valid "contracts" exist between itself and an

16   unspecified third party."); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *4 (N.D. Cal. Dec. 22,

17   2006) (finding insufficient allegations of tortious interference with contract where the plaintiff

18   alleged that defendant's actions "damaged [the plaintiff's] relationships with third parties and with

19   Google AdSense," but the "[p]laintiff never identified any of the third parties"); *Cocona, Inc. v.

20   Singtex Indus. Co.*, 2014 WL 5072730, at *13 (D. Colo. Oct. 9, 2014) (finding tortious

21   interference with contract claims insufficient where allegations "provide[d] no basis from which

22   even the number of contracts at issue c[ould] be reasonably inferred").

23        Here, Plaintiff pleads that "North Star entered into several agreements with major oil

24   companies whereby North Star would sell and the companies would purchase North Star's

25   biodiesel."  Compl. ¶ 85.  Under *Ramona*, because Plaintiff alleges a class of companies rather

26   than specific companies and because it is impossible to even determine how many contracts are at

27   issue, the claim for tortious interference with contract fails.

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    The Court GRANTS Defendant's motion to dismiss with respect to Plaintiff's claims for

2    tortious interference with contract and negligent and tortious interference with prospective

3    economic advantage with leave to amend.  Leave to amend is granted because the deficiencies

4    with respect to the statute of limitations and the pleadings may be cured.  Additionally, the

5    economic loss rule does not render amendment futile because Plaintiff may be able to identify

6    facts that establish an exception to the economic loss rule.

7    **C.      Breach of Implied Covenant of Good Faith and Fair Dealing**

8    Defendant argues that Plaintiff's claim under the implied covenant of good faith and fair

9    dealing cannot be sustained because it simply repeats elements of the breach of contract claim.

10   Mot. at 17–18.  Under California law, every contract "imposes upon each party a duty of good

11   faith and fair dealing in its performance and its enforcement."  *McClain v. Octagon Plaza, LLC*,

12   159 Cal. App. 4th 784, 796 (2008) (quoting *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2

13   Cal. 4th 342, 371–72 (1992)).  The covenant "is based on general contract law and the long-

14   standing rule that neither party will do anything which will injure the right of the other to receive

15   the benefits of the agreement."  *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36 (1995).

16   A "breach of the implied covenant of good faith and fair dealing involves something

17   beyond breach of the contractual duty itself."  *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175

18   Cal. App. 3d 1, 54 (1985).  In order to make a claim for breach of the implied covenant, the

19   plaintiff must show that defendant "fail[ed] or refuse[d] to discharge contractual responsibilities,

20   prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and

21   deliberate act, which unfairly frustrates the agreed common purposes and disappoints the

22   reasonable expectations of the other party."  *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222

23   Cal. App. 3d 1371, 1395 (1990).  Additionally, "[i]f the allegations do not go beyond the

24   statement of a mere contract breach and, relying on the same alleged acts, simply seek the same

25   damages or other relief already claimed in a companion contract cause of action, they may be

26   disregarded as superfluous as no additional claim is actually stated."  *Id.*

27   Here, Plaintiff has not pled sufficient facts independent of the breach of contract claim to

28
30

1    prevent dismissal of Plaintiff's claim for violation of the implied covenant of good faith and fair

2    dealing.  Under the breach of contract claim, Plaintiff seeks relief based on Defendant's failure to

3    "build and deliver biodiesel process units capable of producing 1,000 barrels per day of finished

4    product biodiesel.  [Defendant] also failed to cure the numerous errors burdening the operability,

5    productivity, and efficiency of the plant . . . ."  Compl. ¶ 55.  Under the implied covenant of good

6    faith and fair dealing claim, Plaintiff lists a number of errors causing the breach of contract: (1)

7    "[Defendant] did not use the care and attention required to deliver the product it contractually

8    agreed to provide"; (2) "[Defendant] utilized components not suitable for the requirements of the

9    project"; (3) "[Defendant] provided defective parts"; (4) "[Defendant] failed to ensure that

10   component parts were clean and useable, e.g. were not filled with debris"; (5) "[Defendant] failed

11   to use ordinary care or to abide by industry standards"; and (6) "[Defendant] failed to produce the

12   biodiesel process units by the date and at the productivity rate provided in the Contract."  *Id.* ¶ 65.

13         The facts that Plaintiff lists with respect to the implied covenant of good faith and fair

14   dealing are not distinct from the breach of contract claim.  Each of the facts alleged are part of the

15   facts underpinning the breach of contract, namely, the failure of the plant to produce 1,000 barrels

16   of biodiesel per day and Defendant's failure to repair the issue.  Defendant's failure to deliver the

17   product it had promised in a timely manner, as stated in (1) and (6) above, are simply statements

18   that Defendant breached the contract.  Additionally, the use of unsuitable and defective

19   components, described in (2), (3), and (4) above, and the failure to abide by industry standards,

20   described in (5) above, are reasons why the ultimate product failed to satisfy the terms of the

21   contract.  Additionally, Plaintiff seeks identical damages under the breach of contract and breach

22   of implied covenant.  *Id.* ¶¶ 59, 69.

23         This case is unlike *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal.

24   App. 4th 873 (2011), where a California appellate court held that a breach of contract and a breach

25   of the covenant of good faith and fair dealing could both be brought because the "gravamen of the

26   two counts differ."  *Id.* at 885.  In that case, the parties entered a contract to create a biographical

27   documentary film about Wayne Carter, who performs under the name Lil' Wayne.  *Id.* at 878.  A

28
                                                            31

United States District Court
Northern District of California

1    breach of contract claim was brought for violation of specific provisions of the contract, such as

2    the requirement that the defendant would make Lil' Wayne available at any time during the

3    filming of the documentary.  *Id.* at 885.  In contrast, the claim for a breach of the covenant of good

4    faith and fair dealing was based on the defendant's attempt to undermine the sale of the film by,

5    for example, seeking an injunction against the sale of the film and telling distributors the film was

6    unauthorized.  *Id.*  Here, the breach of contract claim and the claim for breach of the implied

7    covenant of good faith and fair dealing are both based on Defendant's use of unusable and

8    improperly refurbished equipment and, thus, Defendant's violation of the terms of the contract.

9         Defendant's motion to dismiss Plaintiff's implied covenant of good faith and fair dealing

10   claim is GRANTED with leave to amend.  Leave to amend is granted because Plaintiff may be

11   able to identify facts that show that Defendant took actions in bad faith distinct from those

12   underlying the breach of contract claim that served to deprive Plaintiff of the benefits of the

13   contract.

14       **D.      Breach of Implied Warranty of Fitness for a Particular Purpose**

15       Defendant argues that Plaintiff disclaimed the implied warranty of fitness for a particular

16   purpose in the contract.  For the purposes of the motion, Defendant assumes that the California

17   Commercial Code's heightened standard for disclaiming implied warranties applies.  Mot. at 18

18   n.8.  The contract in this case contains the following disclaimer: "[t]he warranties . . . are exclusive

19   and are in lieu of any and all other warranties from [Defendant], whether statutory, express[,] or

20   implied (including without limitation, all warranties of . . . fitness for a particular purpose)."  May

21   22, 2012 Services Order, Terms & Conditions ¶ 13(b).

22       Under the California Commercial Code, disclaimers of implied warranties of

23   merchantability and fitness are effective if they are "conspicuous."  Cal. Com. Code § 2316(2).

24   The Code defines "conspicuous" as "so written, displayed, or presented that a reasonable person

25   against whom it is to operate ought to have noticed it."  Cal. Com. Code § 1201(b)(10).  Plaintiff

26   does not argue that the warning in this case is not conspicuous.  The warning is capitalized,

27   bolded, and in larger font than the rest of the text.  *See* May 22, 2012 Services Order, Terms &

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    Conditions ¶ 13(b); *see also Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*, 2013 WL 275691,

2    at *5 (S.D. Cal. Jan. 24, 2013) (finding disclaimer that was capitalized and conspicuously placed

3    to be sufficiently conspicuous for disclaimer to be effective).

4         However, Plaintiff argues that the disclaimer of the implied warranty of fitness for a

5    particular purpose is void if that disclaimer also disclaims "the express warranty set forth in the

6    contract." Resp. at 20.  Under California law, a general disclaimer of an implied warranty cannot

7    disclaim an express warranty provided elsewhere in the contract without clear agreement of the

8    parties. *Hauter v. Zogarts*, 14 Cal. 3d 104, 119 (1975) (where "a disclaimer or modification is

9    inconsistent with an express warranty, words of disclaimer or modification give way to words of

10   warranty unless some clear agreement between the parties dictates the contrary relationship").

11        Here, there is no indication that the disclaimer of the implied warranty of fitness for a

12   particular purpose has somehow disclaimed the express warranty provided by the Services Order.

13   In fact, in the same paragraph as the disclaimer, the contract specifies that the express warranty is

14   still in effect: "The only warranty made by Contractor is expressly stated in Section [13(a)]

15   hereof." May 22, 2012 Services Order, Terms & Conditions ¶ 13(b).  Defendant has not even

16   challenged Plaintiff's claim for breach of express warranty.  Because the disclaimer of the implied

17   warranty of fitness for a particular purpose is conspicuous and does not disclaim the express

18   warranty, the disclaimer is valid.

19        Thus, the Court GRANTS defendant's motion to dismiss Plaintiff's claim for breach of the

20   implied warranty of fitness for a particular purpose.  This dismissal is with prejudice because

21   Plaintiff will be unable to allege facts that would change the legally valid disclaimer of the implied

22   warranty of fitness for a particular purpose.

23        **E.      Damages**

24        Defendant moves to dismiss Plaintiff's prayer for consequential damages, punitive

25   damages, and attorney's fees.  The Court addresses each argument in turn.

26        **1.      Consequential Damages**

27        Defendant argues that consequential damages arising from the contract have been waived

28
                                                    33
     Case No. 16-CV-00716-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and, therefore, should be dismissed because the Services Orders specify that (1) the sole remedy of

2    "any failure of contractor to comply with its obligations" is correction of the non-conformity,

3    Terms & Conditions ¶ 13(c)–(d), and (2) consequential damages are waived, *id.* ¶ 17(b).  Plaintiff

4    argues that, under California Commercial Code § 2719(2), the waiver of consequential damages is

5    invalid.  *Id.*  As discussed above in the context of the *J'aire* exception, the California Commercial

6    Code applies to the contract at issue in the instant suit.

7            Section 2719(2) of the California Commercial Code specifies that "[w]here circumstances

8    cause an exclusive or limited remedy to fail of its essential purpose," other remedies under the

9    Code become available, including consequential damages, *see* Cal. Com. Code § 2712–2715

10   (providing consequential damages).  The Ninth Circuit has noted that, when evaluating whether a

11   remedy has failed of its essential purpose, "[e]ach case must stand on its own facts."  *S.M. Wilson*

12   *& Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978); *see also RRX Indus., Inc. v. Lab-*

13   *Con, Inc.*, 587 F.2d 543, 547 (9th Cir. 1985) (discussing *S.M. Wilson*).  In *S.M. Wilson*, the court

14   upheld a waiver of consequential damages even though the contract at issue contained a remedy

15   provision that had failed to cure the defects in a tunnel boring machine purchased by the plaintiff.

16   *S.M. Wilson*, 587 F.2d at 1375.  The Court reasoned that because the contract was one between

17   parties of equal bargaining power, the breach was "not so total and fundamental" as to eliminate

18   the waiver of consequential damages.  *Id.*  In contrast, in *RRX Industries*, the Ninth Circuit upheld

19   a consequential damages award provided in a bench trial where the trial court made findings that

20   the defendant failed to satisfy the limited remedies in the contract.  *RRX Indus.*, 772 F.2d at 547.

21   There, the defendant was "unwilling or unable" to provide a working product as represented or to

22   fix the bugs in the product it provided.  *Id.*

23           The question before the Court is not whether the repair remedy failed of its essential

24   purpose, but whether Plaintiff has alleged sufficient facts that could indicate that the contract

25   failed of its essential purpose.  Plaintiff has alleged such facts.  Although Plaintiff alleged that

26   Defendant "promised it would repair the plant, and accepted the responsibility for some errors,"

27   Plaintiff has also alleged that the "minor repairs and advice" provided did not fix the problems

28
                                                34

and, in some cases, exacerbated them.  Compl. ¶¶ 33–34.  "Only after all of the circumstances surrounding the negotiation and performance of the contract have been determined at trial can the enforceability of the consequential damages limitation be determined."  *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F.2d 553, 556–57 (9th Cir. 1985) (applying Washington law, but relying on *S.M. Wilson*).  Therefore, construing all reasonable inferences in favor of Plaintiff, the Court cannot find as a matter of law that consequential damages are unavailable.

Accordingly, Defendant's motion to dismiss is DENIED as to consequential damages.

### 2.    Punitive Damages

Defendant argues that Plaintiff's prayer for punitive damages should be dismissed.  Mot. at 21.  Plaintiff argues that it is procedurally improper to dismiss punitive damages in response to a motion to dismiss and also argues that punitive damages are available.  Resp. at 23–24.

In *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit held that Federal Rule of Civil Procedure 12(f) "does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."  *Id.* at 974–75.  Instead, the court found such arguments "better suited for a Rule 12(b)(6) motion or a Rule 56 motion."  *Id.* at 974; *Linares v. CitiMortgage, Inc.*, 2015 WL 2088705, at *8 (N.D. Cal. May 5, 2015) (analyzing the dismissal of punitive damages as a motion to dismiss).

Here, the parties agree that punitive damages are only available for contract claims if the breaches of contract are also tortious.  *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 77–78 (1993) (as modified) (noting that punitive damages are normally not available for breach of contract unless the breach is also tortious); Mot. at 21; Resp. at 23–24.  The Court has dismissed all of Plaintiff's claims for tortious breaches of contract and, therefore, the prayer for punitive damages must also be dismissed.

The Court GRANTS Defendant's motion to dismiss the prayer for punitive damages with leave to amend because punitive damages may be warranted should Plaintiff successfully plead a tort claim in an amended complaint.

### 3. Attorney's Fees

Defendant argues that Plaintiff's prayer for attorney's fees should be dismissed.  Mot. at 22.  In California, "[a] party may not recover attorney fees unless expressly authorized by statute or contract."  *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 818 (2013) (citations omitted).  The contract at issue in this case does not allocate attorney's fees, and Plaintiff cites no statutory authority that would allow attorney's fees in this case.

Plaintiff's argument that *In re Mission Bay Jet Sports, LLC*, 2010 WL 144441, at *4 (S.D. Cal. Jan. 11, 2010), provides an avenue for attorney's fees under "extraordinary and egregious circumstances" is incorrect.  *In re Mission Bay Jet Sports* is a case under admiralty law and, therefore, does not provide an avenue for attorney's fees under California contract or tort law. Defendant's motion to dismiss Plaintiff's prayer for attorney's fees is GRANTED with prejudice.

### F. Sealing Motion

Defendant brings an Administrative Motion to File Under Seal the entirety of the two Services Orders at issue in this case and seeks to redact the portions of those orders quoted in the instant Motion and the Reply.  ECF No. 38, 52.  Plaintiff filed a non-opposition to Defendant's motion and moved to redact the quotations of the Services Orders from its opposition to the instant motion.  ECF No. 52.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).  Thus, when considering a sealing request, "a strong presumption in favor of access is the starting point."  *Id.* (internal quotation marks and citation omitted).  Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016), bear the burden of overcoming the presumption with "compelling reasons supported by specific factual findings" that outweigh the general history of access and the public policies favoring disclosure, *Kamakana*, 447 F.3d at 1178–79.  Compelling reasons justifying the sealing

36

United States District Court
Northern District of California

1    of court records generally exist "when such 'court files might have become a vehicle for improper

2    purposes,' such as the use of records to gratify private spite, promote public scandal, circulate

3    libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon*, 435 U.S. at 598).

4    However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment,

5    incrimination, or exposure to further litigation will not, without more, compel the court to seal its

6    records." *Id.*

7          Records attached to motions that are "not related, or only tangentially related, to the merits

8    of a case," are not subject to the strong presumption of access. *Ctr. for Auto Safety*, 809 F.3d at

9    1099; *see also Kamakana*, 447 F.3d at 1179 ("[T]he public has less of a need for access to court

10   records attached only to non-dispositive motions because those documents are often unrelated, or

11   only tangentially related, to the underlying cause of action." (internal quotation marks omitted)).

12   Parties moving to seal records attached to motions unrelated or only tangentially related to the

13   merits of a case must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of

14   Civil Procedure. *Ctr. for Auto Safety*, 809 F.3d at 1098-99; *Kamakana*, 447 F.3d at 1179–80.  The

15   "good cause" standard requires a "particularized showing" that "specific prejudice or harm will

16   result" if the information is disclosed. *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11

17   (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c).  "Broad allegations of harm, unsubstantiated by specific

18   examples or articulated reasoning" will not suffice.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

19   F.2d 470, 476 (9th Cir. 1992) (citation omitted).

20         Motions to dismiss are more than tangentially related to the underlying causes of action,

21   and thus sealing requests regarding such motions must overcome the presumption of access with

22   compelling reasons.  *See In re PPA Products Liability Litigation*, 460 F.3d 1217, 1231 (9th Cir.

23   2006) (holding that motions to dismiss are typically treated as dispositive motions).  Pursuant to

24   Rule 26(c), a trial court has broad discretion to permit sealing of court documents for, inter alia,

25   the protection of "a trade secret or other confidential research, development, or commercial

26   information."  Fed. R. Civ. P. 26(c)(1)(G).  The Ninth Circuit has adopted the definition of "trade

27   secrets" set forth in the Restatement of Torts, holding that "[a] trade secret may consist of any

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement (First) of Torts § 757 cmt. b). "Generally [a trade secret] relates to the production of goods. . . . It may, however, relate to the sale of goods or to other operations in the business. . . ." *Id.* (ellipses in original). In addition, the U.S. Supreme Court has recognized that sealing may be justified to prevent judicial documents from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598.

Parties moving to seal documents must comply with the procedures established by Civil Local Rule 79-5. Pursuant to that rule, a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79-5(b). "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)." *Id.* Civil Local Rule 79-5(d), moreover, requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" and that "lists in table format each document or portion thereof that is sought to be sealed," as well as an "unredacted version of the document" that "indicate[s], by highlighting or other clear method, the portions of the document that have been omitted from the redacted version." *Id.*

The instant motion fails to comport with the Civil Local Rules and with U.S. Supreme Court and Ninth Circuit precedent. Plaintiff seeks to seal the entirety of the two Services Orders at issue in this case. ECF Nos. 38-6, 38-7. Many portions of these contracts contain standard contract provisions that constitute non-sealable, public information. Some egregious examples follow. Defendant attempts to seal the statement from the contracts that "[North Star] agrees to the Terms and Conditions and acknowledges that it has received a copy thereof" and that "[t]he provisions of this section have been negotiated by the parties after due consideration." Mot. at 11. In the reply, Defendant tries to seal the statement that "the Services to be performed and provided by [Chemex] hereunder shall be performed and provided in an efficient and prudent manner and in

38

all respects in accordance with all applicable laws." Reply at 12.  Clearly, the sealing request was not narrowly tailored.

Accordingly, Defendant's Administrative Motion to File Under Seal is DENIED without prejudice.  Defendant shall file any renewed motions to seal within seven days of this Order.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's deficient claims and deficient prayer for damages.  Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: November 11, 2016

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

39
Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS