1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12    R POWER BIOFUELS, LLC,

Case No. 16-CV-00716-LHK

13                    Plaintiff,

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

14         v.

15    CHEMEX LLC,

Re: Dkt. No. 73

16                    Defendant.

17

18         R Power Biofuels, LLC ("Plaintiff") brings the instant suit against Chemex LLC

19    ("Defendant") for contract and tort claims arising from Defendant's alleged failure to adequately

20    build a biodiesel plant.  Before the Court is Defendant's second motion to dismiss.  ECF No. 73

21    ("Mot.").  Having considered the parties' briefing, the relevant law, and the record in this case, the

22    Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

23    I.    **BACKGROUND**

24         A.    **Factual Background**

25         The Court accepts the facts alleged in the second amended complaint ("SAC") as true for

26    the purposes of deciding the instant motion to dismiss.  ECF No. 72 (SAC).  Plaintiff is a former

27    owner of AGRON Bioenergy LLC, formerly known as North Star Biofuels LLC (hereinafter

28

1

United States District Court
Northern District of California

"North Star"), and brings the instant suit as assignee of North Star's claims.  SAC ¶ 3.

In 2012, North Star entered into a written agreement with Defendant, in which Defendant agreed to design, engineer, and build a biodiesel production plant using North Star's proprietary biodiesel production technology.  *Id.* ¶¶ 10–14.  The biodiesel plant was to be built at North Star's facility in Watsonville, California.  *Id.* ¶ 11.  The written agreement was composed of two written "Services Orders," one entered on February 14, 2012 for the design of the biodiesel plant, and one entered on May 22, 2012 for the construction of the biodiesel plant.[1]  *Id.* ¶¶ 13–14; ECF No. 40-1 ("February 14, 2012 Services Order"); ECF No. 40-2 ("May 22, 2012 Services Order").  Defendant refused to build the biodiesel plant unless it was also hired to design the plant.  *Id.* ¶ 15.  North Star paid Defendant $3.5 million in total to design and build the plant.  *Id.* ¶ 19.

The biodiesel plant was based on a "modular" design, that is, the plant was composed of multiple independent "skid-mounted" structures connected to one another to form a fully-functioning biodiesel production plant.  *Id.* ¶ 21.  Defendant built each skid one at a time and delivered them on a rolling basis, albeit behind schedule and over-budget.  *Id.* ¶ 26–27.

Between May 2012 and December 2012, Defendant asked North Star for permission to utilize used equipment from Defendant's storage yard, rather than new equipment, to build the plant.  *Id.* ¶ 23.  Defendant promised North Star that the used equipment would be suitable and ready to use for the biodiesel plant after Defendant refurbished and retrofitted the equipment to meet the design specifications of North Star's plant.  *Id.* ¶¶ 23–25.  Defendant sold this used equipment to North Star at a sizeable profit and charged significant additional fees for the work Defendant did to refurbish and retrofit the equipment.  *Id.* ¶ 24.

The plant could not be started until all of the skids were delivered, installed, and properly connected.  *Id.* ¶ 27.  In June 2013, North Star attempted to start the biodiesel plant.  *Id.* ¶ 28.

---

[1] In this Court's Prior Order on Defendant's first motion to dismiss, the Court took judicial notice of the Services Orders.  ECF No. 69 ("Prior Order") at 2 n.2; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (allowing judicial notice of "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings'" (citation omitted)).

While the structure housing North Star's proprietary biodiesel process functioned adequately, the other units performing conventional chemical engineering processes failed to perform. *Id.* After investigating the system, North Star detected performance problems and identified numerous engineering and fabrication errors caused by Defendant, many of which were caused by Defendant's failure to follow its own engineering and manufacturing designs. *Id.* ¶ 29–30. Specifically, Defendant failed to sufficiently refurbish and retrofit the used equipment it supplied, some of which was filled with dirt and debris and was the incorrect size for the design. *Id.* ¶ 29(b)–(c).

Starting in July 2013, North Star repeatedly informed Defendant that the plant was not operational. *Id.* ¶ 33. Defendant promised to repair the plant at first. *Id.* ¶ 34. Defendant accepted responsibility for some errors, but denied responsibility for the majority of the problems. *Id.* ¶ 34. Defendant provided some minor repairs and advice, but Defendant's actions and advice either did not help or exacerbated the issues. *Id.* ¶ 35.

North Star was forced to make repairs itself and incurred $1.5 million in third-party costs. *Id.* ¶ 36. The plant eventually was able to run, but was never able to produce 1,000 barrels of biodiesel per day, the amount originally contemplated and for which the parties contracted. *Id.* ¶ 37.

North Star entered a number of contracts with major oil companies such as Chevron and Tesoro for the sale of biodiesel, locked in at high prices, in reliance on Defendant's assurances that the plant would be operational. *Id.* ¶ 46. North Star also anticipated that it would expand its business based on its relationships with several oil companies, including Chevron and Tesoro. *Id.* ¶ 47. On May 21, 2015, North Star assigned Plaintiff all claims for monetary losses caused by Defendant's conduct. *Id.* ¶ 50.

### B.  Procedural History

On February 11, 2016, Plaintiff filed the instant suit against Defendant. ECF No. 1. On June 24, 2016, after discussions with Defendant, Plaintiff filed a first amended complaint ("FAC"). ECF No. 37. In the FAC, Plaintiff brought claims for (1) breach of contract, (2) breach

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

of the implied covenant of good faith and fair dealing, (3) breach of the implied warranty of fitness for a particular purpose under California Commerce Code § 2315, (4) breach of express warranty, (5) tortious interference with contract, (6) negligent and tortious interference with prospective economic advantage, and (7) negligent and intentional misrepresentation.  FAC ¶¶ 50–149.

On July 25, 2016, Defendant filed a motion to dismiss the FAC.  ECF No. 39.  With the exception of Plaintiff's claims for breach of contract and breach of express warranty, Defendant challenged all of Plaintiff's claims.  *Id.*  Defendant also challenged Plaintiff's prayer for consequential damages, punitive damages, and attorney's fees.  *Id.*  On August 8, 2016, Plaintiff filed an opposition, ECF No. 43, and on August 18, 2016, Defendant filed a reply, ECF No. 53.

On November 11, 2016, the Court granted in part and denied in part Defendant's motion to dismiss the FAC ("Prior Order").  ECF No. 69 (Prior Order).  Specifically, the Court dismissed with leave to amend Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, tortious interference with contract, negligent and tortious interference with prospective economic advantage, and negligent and intentional misrepresentation, as well as Plaintiff's prayer for punitive damages.  *Id.* at 19–33.  The Court dismissed with prejudice Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose and Plaintiff's prayer for attorney's fees.  *Id.*  The Court denied Defendant's motion to dismiss Plaintiff's prayer for consequential damages.  *Id.* at 33–36.

On December 12, 2016, Plaintiff filed the SAC.  ECF No. 72 (SAC).  In the SAC, Plaintiff brings claims for (1) breach of contract, (2) breach of express warranty, (3) intentional misrepresentation, (4) tortious interference with contract, and (5) tortious interference with prospective economic advantage.  SAC ¶¶ 51–117.  Plaintiff also includes a prayer for consequential damages, punitive damages, and attorney's fees.  *Id.* at 27.

On December 27, 2016, Defendant filed the instant motion to dismiss the SAC.  ECF No. 73 ("Mot.").  On January 24, 2017, Plaintiff filed an opposition, ECF No. 82 ("Opp'n"), and on February 14, 2017, Defendant filed a reply, ECF No. 89 ("Reply").

II.     **LEGAL STANDARD**

4

United States District Court
Northern District of California

### A.    Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  While "'detailed factual allegations'" are not required, a complaint must include sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "'formulaic recitation of the elements' of a cause of action." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal*, 566 U.S. at 678.

### B.    Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy Rule 9(b)'s heightened standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific

content of the false representations as well as the identities of the parties to the

misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

(internal quotation marks omitted).  "The plaintiff must set forth what is false or misleading about

a statement, and why it is false."  *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.

1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d

423, 429 n.6 (9th Cir. 2001).

### C.    Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d

1122, 1127, 1140 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

When dismissing a complaint for failure to state a claim, "'a district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts.'"  *Id.* at 1127 (quoting *Doe v. United

States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Generally, leave to amend shall be denied only if

allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile,

or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

522, 532 (9th Cir. 2008).

### D.    State Law in Diversity Cases

"In determining the law of the state for purposes of diversity, a federal court is bound by

the decisions of the highest state court."  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530

(9th Cir. 2011).  If the state's highest court has not decided an issue, it is the responsibility of the

federal courts sitting in diversity to predict "how the state high court would resolve it."  *Id.*; *Air-

Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation

marks omitted).  In the absence of clear authority, the Court looks for guidance from decisions of

the state appellate courts and other persuasive authorities, such as decisions from courts in other

United States District Court
Northern District of California

jurisdictions and treatises.  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).

## III.    DISCUSSION

Defendant moves to dismiss Plaintiff's three tort claims for (1) intentional misrepresentation, (2) tortious interference with contract, and (3) tortious interference with prospective economic advantage.  Defendant also moves to dismiss Plaintiff's prayer for (1) consequential damages, (2) punitive damages, and (3) attorney's fees.  Defendant does not challenge Plaintiff's claims for breach of contract or breach of express warranty.  The Court first addresses Plaintiff's intentional misrepresentation claim, then addresses Plaintiff's tortious interference with contract and tortious interference with prospective economic advantage claims, and finally addresses Plaintiff's prayer for damages and attorney's fees.

### A.    Intentional Misrepresentation

Defendant argues that Plaintiff's intentional misrepresentation claim fails because (1) it is barred by the economic loss rule, and (2) Plaintiff fails to sufficiently plead Defendant's intent. The Court addresses each argument in turn.

#### 1.    Economic Loss Rule

The Court first discusses whether Plaintiff's intentional misrepresentation claim is barred by the economic loss rule.  Under the economic loss rule, "purely economic losses are not recoverable in tort." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978)); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) ("[The economic loss rule] requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."). The purpose of the rule is to "prevent[] the law of contract and the law of tort from dissolving one into the other." *Id.* at 988 (internal quotation marks and citation omitted); *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003) ("A person may not ordinarily recover in tort

7

United States District Court
Northern District of California

1    for the breach of duties that merely restate contractual obligations.").

2           However, the economic loss rule does not prevent recovery in tort if (1) a "special

3    relationship" exists between the plaintiff and the defendant, *J'Aire Corp. v. Gregory*, 24 Cal. 3d

4    799, 804 (1979); *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958), or (2) the conduct "violates a

5    duty independent of the contract arising from principles of tort law," *Erlich v. Menezes*, 21 Cal.

6    4th 543, 551 (1999) (citation omitted).

7           Defendant argues that the economic loss rule bars Plaintiff's intentional misrepresentation

8    claim, and that neither exception to the economic loss rule applies.  With respect to the special

9    relationship exception, the Court agrees with Defendant.  In the Court's Prior Order on

10   Defendant's first motion to dismiss, this Court held that the special relationship exception does not

11   provide an exception for Plaintiff's tort claims in the instant case.  Prior Order at 7–17.  Although

12   Plaintiff preserves an objection to the Court's prior holding, Opp'n at 11 n.4, Plaintiff does not

13   make any arguments concerning the special relationship exception.  Accordingly, the Court finds

14   that, for the reasons discussed in this Court's Prior Order, the special relationship exception does

15   not provide an exception to the economic loss rule in the instant case.

16          The question then is whether Defendant's alleged conduct falls into the independent duty

17   exception to the economic loss rule.  The independent duty exception to the economic loss rule

18   applies where the defendant's conduct "violates a duty independent of the contract arising from

19   principles of tort law." *Erlich*, 21 Cal. 4th at 551.  The California Supreme Court has recognized

20   an independent duty outside the insurance context (1) where a defendant's actions that constituted

21   breach of contract also caused physical injury; (2) for wrongful discharge in violation of

22   fundamental public policy; or (3) where the plaintiff was fraudulently induced to enter a contract.

23   *Erlich*, 21 Cal. 4th at 551–52; *see also Oracle USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL

24   2084154, at *4 (N.D. Cal. July 13, 2009) ("Exceptions have been permitted only where: a breach

25   of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an

26   insurance contract; an employee was wrongfully discharged in violation of a fundamental public

27   policy; or a contract was fraudulently induced." (citing *Butler–Rupp v. Lourdeaux*, 134 Cal. App.

28

United States District Court
Northern District of California

8

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

4th 1220 (2005)).  In *Robinson Helicopter*, 34 Cal. 4th 979, the California Supreme Court found an additional "narrow" exception where (1) the defendant committed fraud independent of the contract by falsely representing that the defendant was complying with the contract, and (2) the misrepresentations exposed the plaintiff to personal liability and members of the public to harm. *Id.* at 990.

Of the above categories, Plaintiff argues only that Defendant fraudulently induced North Star to enter a contract.  "[F]raudulent inducement is a well-recognized exception to the economic loss rule."  *Lee v. Fed. St. L.A.*, 2016 WL 2354835, at *9 (C.D. Cal. May 3, 2016); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) ("[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud."  (quoting *Lazar*, 12 Cal. 4th at 645)). Fraudulent inducement occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable."  *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996).

Moreover, the California Supreme Court has held that fraudulent inducement can exist where a contract is induced through promissory fraud.  *See Lazar*, 12 Cal. 4th at 638 ("[T]he plaintiff's claim [for promissory fraud] does not depend upon whether the defendant's promise is ultimately enforceable as a contract.  'If it is enforceable, the [plaintiff] . . . has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract.'").  "'Promissory fraud' is a subspecies of the action for [intentional misrepresentation]."  *Id.*  "Where a promise is made without [the intention to perform], there is an implied misrepresentation of fact that may be actionable fraud."  *Id.*

District courts in this circuit are split on whether promissory fraud alone may give rise to the fraudulent inducement exception to the economic loss rule.  Some district courts in this circuit have held that promissory fraud is insufficient if the promise becomes part of an enforceable contract.  *See, e.g.*, *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1044 (N.D. Cal. 2012) (holding that exceptions to the economic loss doctrine do not apply where the

9

United States District Court
Northern District of California

fraudulent misrepresentations are "also alleged to be a stand-alone contract").

In contrast, other district courts have held that an adequately pled promissory fraud claim that induces the formation of a contract is sufficient to trigger the fraudulent inducement exception to the economic loss rule. *See Joli Grace, LLC v. Country Visions, Inc.*, 2016 WL 6996643, at *9 n.6 (E.D. Cal. Nov. 30, 2016) (the counter-defendants "argue that the economic loss rule will always preclude recovery of fraud claims when the misrepresentations arose from the underlying contract and caused the injured party to enter into a contract. However, such a view ignores the California Supreme Court's position that the economic loss rule does not preclude recovery for fraudulent inducement."); *J2 Cloud Servs., Inc. v. Fax87*, 2016 WL 6833904, at *4 (C.D. Cal. Nov. 18, 2016) (finding claim not barred by the economic loss rule because promissory fraud cause of action was adequately alleged).

The Court follows the latter cases, which more closely follow the California Supreme Court's *Lazar* holding that, if the promise that forms the basis of a promissory fraud cause of action "is enforceable [as a contract], the [plaintiff] . . . has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract." *Lazar*, 12 Cal. 4th at 645 (citations and internal quotation marks omitted). This Court is bound by the holding in *Lazar. See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) ("[A] federal court is bound by the decisions of the highest state court.").

However, even if a plaintiff adequately alleges that Defendant committed promissory fraud, that promissory fraud must induce a plaintiff to enter a contract in order for the fraudulent inducement exception to the economic loss rule to apply. *See Rosenthal*, 14 Cal. 4th at 415 (requiring a plaintiff to have been "induced by fraud" to enter a contract). A plaintiff fails to allege fraudulent inducement if a plaintiff is not induced to enter a new contractual arrangement, but is induced to continue performing the plaintiff's existing contractual obligations. *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 992–93 (E.D. Cal. 2012) (holding that a promise to comply with the terms of a contract could not fraudulently induce the creation of a contract that had already been entered by the parties). Where the formation of a

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    contract is not induced by allegedly false promises, the economic loss rule prevents plaintiffs from

2    seeking "relief for 'essentially a fraudulent or bad faith breach of [] existing contractual

3    obligations.'" *Id.* at 994.

4         In summary, to adequately allege the fraudulent inducement exception to the economic

5    loss rule based on promissory fraud, a plaintiff must allege that (1) promissory fraud has occurred,

6    and (2) promissory fraud induced the plaintiff to enter a new or modified contract.

7         Here, Plaintiff argues that it satisfies the requirements of the fraudulent inducement

8    exception to the economic loss rule.  Specifically, Plaintiff argues that Defendant fraudulently

9    induced the creation of a new or modified contract—one in which Defendant was to utilize used

10   and refurbished components rather than new components in North Star's biodiesel plant—by

11   falsely promising that the used components would meet the required specifications of the original

12   contract.  Opp'n at 12–13 (arguing that "Defendant's fraud in inducing [North Star] to agree to

13   purchase used equipment is an independent act that is not barred by the economic loss rule").[2]

14   Although Plaintiff has not alleged a separate claim for promissory fraud, Plaintiff's intentional

15   misrepresentation claim is based on allegations that promissory fraud induced Plaintiff to enter a

16   new or modified contract.  Specifically, the intentional misrepresentation claim alleges that

17   "[Defendant] fraudulently induced North Star to agree to the use of used equipment by

18   fraudulently promising that such equipment would be properly refurbished to meet the design

19

_____

20   [2] Although the SAC also alleges that Defendant committed fraud by making promises to repair the
     biodiesel plant, Plaintiff does not argue that the "promise to repair" allegations fall within any
21   exception to the economic loss rule.  Therefore, Plaintiff has waived any such allegation.  *See
     Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240
22   (9th Cir. 2011) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is
     deemed waived.").  Even if the promise to repair allegation were not waived, there is no allegation
23   that Defendant's promise to repair falls into an exception to the economic loss rule.  No fraudulent
     inducement has been alleged.  Moreover, the independent duty exceptions to the economic loss
24   rule, in the absence of fraudulent inducement, do not apply where a party violates a promise to
     comply with already-existing contractual obligations.  *See Oracle*, 2009 WL 2084154 at *4
25   (holding that a fraud claim based on the defendant's violation of a promise to pay outstanding
     invoices already owed under contract could not survive the economic loss rule).  Here, the
26   Services Orders explicitly *required* Defendant to repair the biodiesel plant.  Therefore, a tort claim
     based on Defendant's failure to follow through on that contractual requirement—even if done in
27   bad faith—is barred by the economic loss rule.  Accordingly, Plaintiff's tort claims cannot be
     based on Defendant's allegedly false promises to repair the biodiesel plant.

28
Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

specifications." SAC ¶ 72.  When, as here, an intentional misrepresentation claim is based on an allegedly false promise, an intentional misrepresentation claim is alternatively called a "promissory fraud" claim.  *See Lazar*, 12 Cal. 4th at 638 ("'Promissory fraud' is a subspecies of the action for [intentional misrepresentation].").  Thus, Plaintiff argues that Defendant committed promissory fraud, and that the promissory fraud induced plaintiff to enter a new or modified contract.

In response, Defendant argues that no fraudulent inducement occurred because this Court's Prior Order precludes any cause of action arising from the parties' agreement for the use of used and refurbished equipment.  Second, Defendant argues that the use of used and refurbished equipment was already contemplated by the original contract for building the biodiesel plant—the Services Orders—and therefore North Star was not induced to enter a new or modified contract by Defendant's allegedly false promises.  Finally, Defendant argues that Plaintiff has failed to adequately allege the intent necessary to satisfy the elements of an intentional misrepresentation claim or of the fraudulent inducement exception to the economic loss rule.  The Court addresses each of Defendant's arguments in turn.

### a. Whether this Court's Prior Order Precludes the Application of the Fraudulent Inducement Exception

Defendant first argues that this Court's Prior Order precludes the application of the fraudulent inducement exception.  Specifically, Defendant quotes this Court's holding that "even assuming the use of refurbished goods was not part of the original agreement, Plaintiff has failed to show how Defendant's actions 'violate a duty independent of the contract arising from principles of tort law.'  Defendant's use of used or refurbished equipment alone simply shows that Defendant breached the original contract or that Plaintiff accepted a modification to the contract." Prior Order at 18.

However, this Court's prior holding explicitly reserved the question of "whether the intentional conduct or intentional torts alleged by Plaintiff involve an 'independent duty' sufficient to satisfy *Erlich*." Prior Order at 18.  "Plaintiff's sole argument concerning the independent duty

12

United States District Court
Northern District of California

exception" on the first round motion to dismiss was that "a duty independent of the contract was created when Defendant offered and Plaintiff accepted satisfaction of the contract with used or refurbished goods."  Prior Order at 18.  Indeed, Plaintiff had failed to make *any* argument that Defendant's intentional or fraudulent conduct constituted one of the recognized independent duty exceptions to the economic loss rule discussed in *Erlich*.  In contrast, Plaintiff now argues that Defendant committed fraudulent inducement, one of the recognized exceptions to the economic loss rule.  Therefore, this Court's Prior Order is inapposite here.

The Court next turns to Defendant's argument that Defendant did not induce the creation of a new or modified contract.

### b.   Whether Defendant Breached an "Existing Contractual Obligation" Between the Parties

As noted above, Plaintiff argues that Defendant fraudulently induced North Star to enter a new or modified contract to provide used and refurbished equipment that is different from the Services Orders, which allegedly provided for the use of new equipment.  Defendant argues that no fraudulent inducement occurred because the parties' agreement about used and refurbished equipment was not a "new or modified" contract and made no changes to the obligations of the parties described in the Services Orders.  As discussed above, if the parties did not enter a new or modified contract with different obligations, Plaintiff was simply induced to continue performing its then-existing contractual obligations, and the fraudulent inducement exception would not apply.  *See Foster*, 868 F. Supp. 2d at 992–93 (holding that a promise to comply with the terms of a contract could not fraudulently induce the creation of a contract that had already been entered by the parties).  Therefore, the question then is whether the Services Orders—the original written contracts between North Star and Defendant at the time the allegedly false statements were made—already involved an agreement for Defendant's use of, and North Star's payment for, used and refurbished goods for the biodiesel plant.

Both parties rely on the May 22, 2012 Services Order.  Defendant points to language that states that "Refurbished equipment ("Equipment") supplied from Contractor's inventory shall be

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    billed at the as-is sales price plus labor and materials for refurbishment." May 22, 2012 Services

2    Order at 1.  In response, Plaintiff points to language that states that "[a]ll materials, supplies,

3    equipment and other items furnished and incorporated by Contractor into the Services shall be

4    new unless otherwise specified on the face of this Service[s] Order." May 22, 2012 Services

5    Order ¶ 3.  The May 22, 2012 Services Order contains a list of materials that were to be used in

6    the biodiesel plant, none of which are specified as used equipment.  *Id.* at 2–5.

7         These provisions of the Services Orders, when read together, "are susceptible of more than

8    one reasonable interpretation and are therefore ambiguous."  *Westlands Water Dist. v. U.S. Dep't*

9    *of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994).  On the one hand, the Services Orders could

10   be read to say that although the parties contemplated the use of the refurbished equipment in the

11   Services Orders, the parties had not agreed to the use of used or refurbished equipment because

12   none was specified on the face of the Services Orders.  May 22, 2012 Services Order ¶ 3.  If this is

13   the correct interpretation of the Services Orders, the parties' agreement for the use of used and

14   refurbished equipment in the biodiesel plant could constitute a separate standalone agreement or a

15   modification to the Services Orders.  A fraudulently induced standalone agreement or a

16   fraudulently induced modification to a contract can satisfy the fraudulent inducement exception to

17   the economic loss rule.  *See Lee*, 2016 WL 2354835 at *4 (finding fraudulent inducement

18   exception to economic loss rule applies to the "second addendum" of a sales agreement, a contract

19   modification with new obligations).  Thus, if this interpretation were correct, the fraudulent

20   inducement exception to the economic loss rule would apply.

21        If this interpretation of the contract is correct, this case would be analogous to *Lee v.*

22   *Federal Street L.A., LLC*, 2016 WL 2354835.  There, the parties had entered an agreement to build

23   condominium units.  During the construction of the units, however, the plaintiff sought to

24   terminate the contract due to delays.  *Id.* at *8–9.  In response, the defendant induced the plaintiff

25   to enter into a second addendum that required the plaintiff to defer terminating the contract for an

26   additional year.  *Id.*  The *Lee* court held that the economic loss rule did not bar a claim where the

27   "plaintiff claim[ed] that the moving defendants fraudulently induced [the plaintiff] by promising

28

14

her that they would deliver her condominium units by December 31, 2011 when, in reality, they had no intention of doing so." *Id.* Similarly here, Plaintiff alleges that Defendant fraudulently induced North Star by promising that the used or refurbished goods would function as adequately as new parts in the biodiesel plant, when in reality, Defendant allegedly knew that the used and refurbished goods would not be adequate. Thus, as in *Lee*, the fraudulent inducement exception to the economic loss rule would apply.

On the other hand, the pricing provision of the Services Orders indicates an understanding of the parties that refurbished equipment would be used to complete the biodiesel project. *See* May 22, 2012 Services Order ("Refurbished equipment ("Equipment") supplied from Contractor's inventory shall be billed at the as-is sales price plus labor and materials for refurbishment."). Moreover, Plaintiff's FAC alleges that on February 15, 2012, before the May 22, 2012 Services Order was signed, Defendant's representative stated that "[Defendant] shall provide refurbished equipment and new equipment for the project." FAC ¶ 69(a). Thus, it is possible the parties mutually understood the Services Orders to include an agreement for the supply of used and refurbished equipment. If this is the correct interpretation, the agreements for the use of used and refurbished equipment would be "existing contractual obligations.'" *Foster*, 868 F. Supp. 2d at 992. That is, because the Services Orders would have already encompassed the duty to provide used and refurbished equipment, the allegedly fraudulent statements made after the May 22, 2012 Services Order was signed would not have "induced" the creation of any new or modified contract.

As described above, one reasonable interpretation of the Services Orders indicates that the obligation to provide used and refurbished equipment was an existing obligation, and another reasonable interpretation indicates that it was a new obligation induced through Defendant's fraudulent statements. Where a contract is susceptible to more than one interpretation, "[a] motion to dismiss cannot be granted." *Westlands*, 850 F. Supp. at 1408 (citing *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Manzarek*, 519 F.3d at 1031 (holding that courts must construe the pleadings in the light most favorable to the plaintiff on a motion to

15

dismiss).  Accordingly, the Court finds that dismissal is not warranted on the grounds that the original Services Orders contained an obligation to use used and refurbished equipment.

### 2.    Allegations of Intent

The Court next turns to Defendant's argument that Plaintiff has insufficiently alleged the intent element of Plaintiff's intentional misrepresentation claim and of the fraudulent inducement exception to the economic loss rule.  The Court first addresses the intent requirement for intentional misrepresentation and the fraudulent inducement exception, and then discusses whether that intent requirement has been satisfied in this case.

"The elements of [intentional misrepresentation] are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter*, 34 Cal. 4th at 990 (citing *Lazar*, 12 Cal. 4th at 638).  A promise to do something in the future may constitute intentional misrepresentation if it was made without any intention to perform.  *Lazar*, 12 Cal. 4th at 638.  Plaintiff's intentional misrepresentation claim is based on Defendant's allegedly false promises to utilize used equipment that Defendant had refurbished to meet the design specifications of the biodiesel plant.  Therefore, to state a claim, Plaintiff must show that Defendant's promises were made without any intention to perform.  As noted above, because the intentional misrepresentation claim here is based on an allegedly false promise, the intentional misrepresentation claim is also called a "promissory fraud" claim.  *See id.* ("'Promissory fraud' is a subspecies of the action for [intentional misrepresentation].").

Fraudulent inducement occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Rosenthal*, 14 Cal. 4th at 415.  As discussed above, Plaintiff's argument that "consent [was] induced by fraud" is based on Defendant's allegedly false promises to utilize used equipment that Defendant had refurbished to meet the design specifications of the biodiesel plant.  That is, the applicability of the fraudulent inducement exception is based on the same actions underlying the intentional misrepresentation (i.e., promissory fraud) claim.  *See Lazar*, 12

16

United States District Court
Northern District of California

1    Cal. 4th at 638 (holding that promissory fraud can be the basis of fraudulent inducement).  Thus,

2    as with Plaintiff's intentional misrepresentation (i.e., promissory fraud) claim, Plaintiff's consent

3    was only "induced by fraud" if Defendant's promises were made without the intention to perform

4    those promises.

5         In summary, Plaintiff only states a claim for intentional misrepresentation and only

6    satisfies the fraudulent inducement exception to the economic loss rule if Plaintiff adequately

7    alleges that Defendant made false promises to utilize used equipment that Defendant had

8    refurbished to meet the design specifications of the biodiesel plant.

9         The Court next turns to whether Plaintiff has adequately alleged such an intent.  Generally,

10   under Federal Rule of Civil Procedure 9(b), a Plaintiff must plead "the factual circumstances of

11   the fraud itself [] with particularity, [but] the state of mind—or scienter—of the defendants may be

12   alleged generally."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007).  However,

13   allegations of intent must still satisfy the plausibility requirements of Rule 8(a).  *See Eclectic*

14   *Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) ("[A]lthough

15   the language of Rule 9 poses no barrier in itself to general pleading of fraudulent intent, *Twombly*

16   and *Iqbal* 's pleading standards must still be applied to test complaints that contain claims of

17   fraud.").  Thus, under Rule 8(a), Plaintiff "must point to *facts* which show that defendant harbored

18   an intention not to be bound by terms of the contract at formation."  *UMG Recordings, Inc. v.*

19   *Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109–10 (C.D. Cal. 2015) (emphasis added); *see*

20   *also Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2014 WL 5112057, at *9 (S.D. Cal. Oct.

21   10, 2014) ("[A]n action for deceit based on a false promise requires a showing of specific intent;

22   as a result, '[a] cause of action for a false promise should plead facts to show the existence of two

23   specific intentions of the promisor: an intention to cause the promisee to act by reason of the

24   promise, and an intention at the time of the promise not to keep it.'")

25        Moreover, it is insufficient to allege intent based purely on Defendant's failure to perform

26   its promises.  The California Supreme Court has held that "something more than nonperformance

27   is required to prove the defendant's intent not to perform his promise."  *Tenzer v. Superscope,*

28

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

*Inc.*, 39 Cal. 3d 18, 30 (1985).  However, the California Supreme Court has also cited to circumstantial evidence that may create an inference of fraudulent intent not to perform a promise: "fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Id.* (citing Prosser, Torts § 109 (5th ed. 1984)).  Thus, the question here is whether Plaintiff has alleged sufficient facts to show that Defendant intended to inadequately refurbish the used equipment at the time Defendant promised to provide used and refurbished equipment.

In the SAC, Plaintiff alleges that "Chemex did not intend to properly refurbish, and did not properly refurbish, the parts and equipment for use in the biodiesel plant," and that "Chemex engaged in intentionally fraudulent and deceptive conduct for the purpose of increasing its own profits by promising to refurbish or retrofit used parts already in its inventory, rather than provide new parts, in building the biodiesel plant."  SAC ¶ 70.

More specifically, Plaintiff alleges that Defendant provided clearly defective parts, such as "a vacuum pump that was rusted and unable to rotate."  SAC ¶ 29(j).  Plaintiff alleges that "[u]pon information and belief, [Defendant] had stored that pump in its open equipment yard without protection from the weather."  *Id.*  Plaintiff provides a number of other examples of equipment that was not refurbished properly.  See SAC ¶¶ 29(n) (improperly sized equipment), 29(o) (same), 29(c) (equipment filled with debris).  Additionally, Plaintiff alleges that Defendant "represented to North Star that [Defendant] would repair errors North Star had found," but "never made the repairs required to make the plant fully functional."  SAC ¶ 34.

The Court finds that Plaintiff has adequately alleged Defendant's intent not to perform Defendant's promises.  Plaintiff has not merely alleged Defendant's "nonperformance" of its allegedly false promises to utilize used equipment that Defendant had refurbished to meet the design specifications of the biodiesel plant.  Instead, despite the fact that some of the equipment allegedly was clearly defective (i.e. rusted out), and Defendant had not refurbished the equipment, Defendant decided to still install that clearly defective equipment in Plaintiff's biodiesel plant.

United States District Court
Northern District of California

18

That action carries an inference that Defendant never actually intended to refurbish the used equipment and instead hoped to cut costs by installing non-refurbished used equipment in the biodiesel plant.  *See Lee*, 2016 WL 2354835 at *9 (finding inference of fraudulent intent where actions taken after promise carried an inference that Plaintiff never intended to perform).

Moreover, in *Tenzer* the California Supreme Court held that a defendant's "continued assurances after it was clear [the defendant] would not perform" the defendant's contractual duties, create an inference of intent.  *Tenzer*, 39 Cal. 3d at 30.  Similarly here, Plaintiff alleges that Defendant provided multiple assurances that Defendant would repair the problems with the biodiesel plant, but failed to make such repairs.

For the foregoing reasons, at least at the motion to dismiss stage, the Court finds that Plaintiff has adequately alleged intent for intentional misrepresentation and promissory fraud, which is a subspecies of intentional misrepresentation.  The fraudulent inducement exception to the economic loss rule here is based on Plaintiff's theory of intentional misrepresentation and promissory fraud, i.e., that Defendant's fraudulent promises induced Plaintiff to enter or modify a contract.  Thus, because Plaintiff has adequately pled intent for intentional misrepresentation and promissory fraud, the Court finds that Plaintiff has properly pled intent for the fraudulent inducement exception to the economic loss rule.  Accordingly, Defendant's motion to dismiss Plaintiff's intentional misrepresentation claim is DENIED.

### B.    Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage

Defendant argues that Plaintiff's tortious interference with contract and tortious interference with prospective economic advantage claims fail because (1) they are barred by the economic loss rule, (2) Plaintiff fails to sufficiently plead Defendant's intent, and (3) Plaintiff's claims are barred by the two-year statute of limitations.  The Court finds that Plaintiff's tortious interference claims fail to satisfy the statute of limitations, and therefore the Court need not reach the issue of the economic loss rule or Defendant's intent as to these claims.

Defendant contends that Plaintiff's claims for tortious interference with prospective

United States District Court
Northern District of California

19

economic advantage and tortious interference with contract are untimely.  Tort claims have a statute of limitations of two years.  Cal. Civ. Proc. Code § 339(1).  The accrual of the statute of limitations is "postpone[d] . . . until the plaintiff discovers, or has reason to discover, the cause of action."  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 951 (C.D. Cal. 2013).  California courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."  *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (emphasis added).  "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988).

The instant suit was filed on February 11, 2016, ECF No. 37, which means that the tort claims must have accrued no earlier than February 11, 2014 to be timely.  In Plaintiff's SAC, Plaintiff alleges that it first discovered that the biodiesel plant would not start in June 2013.  SAC ¶ 28.  Moreover, Plaintiff's SAC alleges that North Star's contracts with Chevron and Tesoro with which Defendant allegedly interfered were one-month contracts for the delivery of biodiesel for the month of June 2013.  SAC ¶¶ 91.  Chevron and Tesoro had the option to renew the contract at the end of the first month.  Thus, because the biodiesel plant failed to start in June 2013, North Star was unable to meet its obligations under the Chevron and Tesoro contracts.  Chevron and Tesoro did not renew the June 2013 contract for the next month as a result.  Therefore, the interference with contract and with prospective economic advantage from the renewal of those contracts began at least by the end of June 2013.

Although North Star suffered interference with its contracts and prospective economic advantages as of June 2013, Plaintiff argues that North Star had not yet discovered the cause of action because North Star had no knowledge of the alleged intentional acts that caused the interference until years later.  Specifically, Plaintiff argues that North Star was only put on notice of the intentional nature of Defendant's acts by January 2015 when Defendant finally stopped attempting any repairs.

First, the Court notes that the inoperability of North Star's biodiesel plant likely provided

20

United States District Court
Northern District of California

1    North Star "reason to at least suspect that a type of wrongdoing has injured them" when that

2    biodiesel plant would not start up.  *Ethicon*, 35 Cal. 4th at 807.  However, even assuming that

3    more is required for an intentional interference claim to accrue, Plaintiff's SAC explicitly alleges

4    that "North Star first began discovering [Defendant's] errors in July 2013, but did not discover

5    [Defendant's] fraud (with respect to refurbishment) until [Defendant] began opening closed

6    vessels in late 2013."  SAC ¶ 98.   Thus, Plaintiff's SAC alleges that as of late 2013: (1) North

7    Star had failed to satisfy the contracts with Chevron and Tesoro and had failed to obtain renewal

8    of those contracts, (2) knew that the biodiesel plant was nonfunctional due to Defendant's

9    mistakes, and (3) knew, or at least suspected, that Defendant had committed fraud.  Thus, by

10   Plaintiff's own allegations, North Star had at least a suspicion of the cause of actions for tortious

11   interference with contract and tortious interference with prospective economic advantage outside

12   the two-year statute of limitations.  Therefore, under *Ethicon* and *Jolly*, Plaintiff's claims are

13   untimely.

14          In Plaintiff's opposition to the instant motion, Plaintiff argues that "in late 2013 [North

15   Star] still trusted that [Defendant] would rectify the situation" because of Defendant's promises of

16   repair.  Opp'n at 17.  However, that argument directly contradicts Plaintiff's allegation that it had

17   discovered Defendant's "fraud" by late 2013.

18          Therefore, the Court finds that Plaintiff's claims for tortious interference with contract and

19   tortious interference with prospective economic advantage are untimely.  Accordingly, the Court

20   GRANTS Defendant's motion to dismiss.  The dismissal is with prejudice because this Court

21   previously dismissed the tortious interference with contract and tortious interference with

22   prospective economic advantage claims based on a failure to adequately plead that the claims were

23   timely.  In this Court's Prior Order, the Court stated "failure to cure the deficiencies identified in

24   this Order will result in a dismissal with prejudice of Plaintiff's deficient claims."  Prior Order at

25   39. Despite this warning, Plaintiff again has failed to adequately allege that the tortious

26   interference with contract and tortious interference with prospective economic advantage claims

27   are timely.  Accordingly, the Court finds that further amendment would be futile, and the

28

dismissal is with prejudice.   *See Leadsinger*, 512 F.3d at 532 (allowing dismissal with prejudice where amendment would be futile).

### C.     Prayer for Damages

#### 1.     Attorney's Fees

In Plaintiff's opposition to the instant motion to dismiss, Plaintiff concedes that it erroneously requested attorney's fees in the SAC.  Opp'n at 2 ("Plaintiff's request for attorneys' fees in the SAC was made in error.  Plaintiff does not seek an award of attorneys' fees at this time.").  On November 11, 2016, the Court granted with prejudice Defendant's motion to dismiss Plaintiff's prayer for attorney's fees.  Accordingly, for a second time, the Court GRANTS with prejudice Defendant's motion to dismiss Plaintiff's prayer for attorney's fees.

#### 2.     Consequential Damages

In this Court's Prior Order, the Court denied Defendant's motion to dismiss Plaintiff's prayer for consequential damages.  Defendant previously argued that Plaintiff's prayer for consequential damages should be dismissed because the parties had waived consequential damages in the Services Orders.  Prior Order at 34 (citing Services Orders, Terms & Conditions ¶ 13(c)–(d)).  However, under § 2719(2), consequential damages are still recoverable despite a waiver "[w]here the circumstances cause an exclusive or limited remedy to fail of its essential purpose."  Cal. Com. Code § 2719(2).  The Services Orders here provided that "the sole remedy of 'any failure of contractor to comply with its obligations' is correction of the non-conformity."  Prior Order at 34 (Services Orders, Terms & Conditions ¶ 13(c)–(d)).  Thus, because Plaintiff's FAC alleged that Defendant had failed to "correct[] [] the non-conformity" with the biodiesel plant, the remedy provided in the Services Orders potentially failed of its essential purpose, and the the Court could not "find as a matter of law that consequential damages are unavailable."  Prior Order at 35 (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978), *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 547 (9th Cir. 1985), and *Milgard Tempering, Inc. v. Selas Corp. of Am*, 761 F.2d 553, 556–57 (9th Cir. 1985)).

In the instant motion, Defendant argues once again that Plaintiff's prayer for consequential

22

damages should be dismissed because the damages were waived in the Services Orders. Defendant argues that "the Court did not consider R Power's burden to establish that the consequential damages waiver is 'unconscionable.'" Mot. at 13. However, Defendant attempts to conflate the analysis of § 2719(2), the basis on which this Court denied Defendant's first motion to dismiss, with California Commercial Code § 2719(3), which provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable," Cal. Com. Code § 2719(3). Section 2719(2) and § 2719(3) provide independent bases for providing consequential damages despite a waiver. *RRX Indus.*, 772 F.2d at 547 ("[Section 2719(2)] provides an independent limit [on waivers of consequential damages] when circumstances render a damages limitation clause oppressive and invalid."). The Ninth Circuit explicitly held in *RRX Industries* that "neither bad faith nor procedural unconscionability is necessary under California Commercial Code § 2719(2)," and that "[u]nconscionability is irrelevant" to the § 2719(2) analysis. *Id.* Therefore, Defendant's new unconscionability argument provides no reason to disturb this Court's Prior Order, which was based entirely on § 2719(2).

Accordingly, because Plaintiff has adequately alleged that the remedy of the Services Orders failed of their essential purpose, the Court DENIES Defendant's motion to dismiss Plaintiff's prayer for consequential damages.

### 3.    Punitive Damages

The Prior Order held that punitive damages "are only available for contract claims if the breaches of contract are also tortious." Prior Order at 35 (citing *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 77–78 (1993)). Thus, because the Prior Order dismissed all of Plaintiff's tort claims, the Prior Order dismissed Plaintiff's prayer for punitive damages. *Id.* However, in the instant order, because the intentional misrepresentation claim survives, the Court DENIES Defendant's motion to dismiss Plaintiff's prayer for punitive damages.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS with prejudice Defendant's motion to dismiss Plaintiff's tortious interference with contract claim, tortious interference with prospective

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

economic advantage claim, and prayer for attorney's fees, and DENIES Defendant's motion to dismiss Plaintiff's intentional misrepresentation claim and prayer for consequential and punitive damages.

**IT IS SO ORDERED.**

Dated: March 29, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No. 16-CV-00716-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS